2007-NMSC-057

172 P.3d 144

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Douglas FRAWLEY, Defendant–Respondent.**

**No. 29,011.**

Supreme Court of New Mexico.

Oct. 25, 2007.

Gary K. King, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} This case is before us for a second time, after remand from the United States Supreme Court for reconsideration in light of its recent opinion in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). The issue we are asked to revisit is whether alteration of a defendant's basic sentence upon a finding by the judge of aggravating circumstances surrounding the offense or concerning the offender, NMSA 1978, § 31–18–15.1(A) (1993), violates the federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. We conclude *Cunningham* requires that we declare Section 31–18–15.1 facially unconstitutional.

## I. BACKGROUND

{2} Defendant Douglas Frawley was convicted of two third-degree felony counts of negligent child abuse, *see* NMSA 1978, § 30–6–1(C) (1997, prior to amendments through 2005), and one misdemeanor count of attempting to commit custodial interference, *see* NMSA 1978, §§ 30–4–4(B) (1989), 30–28–1(D) (1963). The basic sentence for a third-degree felony is three years of imprisonment, NMSA 1978, § 31–18–15(A)(5) (1999, prior to amendments through 2005), while a misdemeanor may be punished by less than one year of imprisonment, NMSA 1978, § 31–19–1(A)(1984).

{3} Our felony-sentencing statute provides that the basic sentence for a noncapital felony "shall be imposed ... unless the court alters such sentence pursuant to" one of four other enumerated statutes. Section 31–18–15(B) (1999, prior to amendments through 2005). One of those enumerated statutes allows for alteration of the basic sentence "upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." NMSA 1978, § 31–18–15.1(A) (1993). "If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record." *Id.* The amount of the alteration up or down, however, may not be greater than one-third of the basic sentence. Section 31–18–15.1(C). Thus, for a third-degree felony a judge may sentence an offender anywhere from two to four years provided that if the sentence is anything other than three years, the judge must incorporate his or her findings in the record when deviating from the basic sentence. In this case, after finding four aggravating circumstances the judge added one year to each of Frawley's third-degree felony convictions. The judge ran Frawley's sentences consecutively, sentencing him to a total term of imprisonment of nine years less one day.[1]

{4} While Frawley's case was on direct appeal, the United States Supreme Court published *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Supreme Court held that a defendant's Sixth Amendment right to a trial by jury was violated when the trial court sentenced the defendant to an "exceptional

---

1. In the trial court's judgment, sentence and commitment order, the judge stated:
   The Court specifically finds the following aggravating circumstances in this case: 1) the defendant's lack of remorse; 2) the short period of time between defendant's sentence for a similar offense and the commission of this offense; 3) the pain and fear endured by the victims and the victims' family; 4) the defendant's flight to avoid prosecution and the circumstances surrounding that flight.

sentence" of 90 months after judicially determining that the defendant had acted with "deliberate cruelty," even though the defendant only admitted in his plea agreement to facts subjecting him to a maximum sentence of 53 months. *Id.* at 298, 305, 124 S.Ct. 2531. Based on *Blakely,* Frawley argued to the Court of Appeals that the alteration of his basic sentence was unconstitutional. *State v. Frawley,* 2005–NMCA–017, ¶ 1, 137 N.M. 18, 106 P.3d 580. The Court of Appeals agreed, holding that Frawley's "enhanced" sentence was unconstitutional because the aggravating circumstances the judge relied on in altering Frawley's basic sentence were not found by a jury beyond a reasonable doubt. *See id.* ¶ 14. We granted certiorari. 2005–NMCERT–002, 137 N.M. 266, 110 P.3d 74.

{5} While Frawley's case was pending review in this Court, we published *State v. Lopez,* 2005–NMSC–036, 138 N.M. 521, 123 P.3d 754. Relying heavily on the California case of *People v. Black I,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005), *vacated,* —— U.S. at ——, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007), *aff'd on remand,* 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007), we held in *Lopez* that in light of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which was published soon after *Frawley* and expanded on *Blakely,* the Court of Appeals had incorrectly decided *Frawley.* *Lopez,* 2005–NMSC–036, ¶ 36, 138 N.M. 521, 123 P.3d 754. Because of our holding in *Lopez,* we issued a Dispositional Order of Reversal in Frawley's case, reversing the Court of Appeals and affirming the trial court's alteration of Frawley's basic sentence. Frawley sought certiorari in the United States Supreme Court. While his petition was pending, the Supreme Court published *Cunningham,* holding that *Black I* had wrongly interpreted federal constitutional law. *See Cunningham,* —— U.S. at ——, 127 S.Ct. at 871 & n. 16. Shortly afterward, the Supreme Court granted Frawley's petition, vacated our judgment, and remanded the case to us for reconsidera-

tion in light of *Cunningham.* We conclude that Frawley was unconstitutionally sentenced because the trial court judge found additional facts before sentencing Frawley above the basic sentence mandated by statute.

## II. HISTORICAL OVERVIEW

{6} Having provided a cursory look at the factual and procedural background of this case, we conduct a deeper historical overview of the relevant statutory and case law. No point of law has longer been established in New Mexico than the rule that the "prescription of the mode of punishment [is] preeminently [a] rightful subject[ ] of legislati[on]." *Bray v. United States,* 1 N.M. (Gild.) 1, 2 (Terr.1852), *available at* 1852 WL 1669, at *1. Of course, a legislature's prerogative to proscribe punishment for criminal activity is subject to constitutional constraints. Recently, modern sentencing statutes and their concern for parity in sentencing like offenders under like circumstances have implicated the Sixth Amendment. Prior to these modern statutes, sentencing would typically occur by a judge exercising his or her discretion to sentence an offender to a determinate amount within a range set by statute. Although, in exercising this discretion, a judge would necessarily consider facts extraneous to the verdict itself, there was no Sixth Amendment problem since every fact necessary for imposition of *any* sentence within the range set by statute had already been found by a jury or admitted in a plea. *See Rita v. United States,* —— U.S. ——, ——, 127 S.Ct. 2456, 2484–85, 168 L.Ed.2d 203 (2007) (Souter, J., dissenting).

### A. New Mexico's Criminal Sentencing Act and Amendments

{7} With the passage of the Criminal Sentencing Act (CSA), New Mexico adopted such a discretionary sentencing scheme in 1977.[2] 1977 N.M. Laws, ch. 216, §§ 1–19. For noncapital felonies, the CSA established ranges of imprisonment and required the judge to

---

2. Prior to the enactment of the CSA, New Mexico followed an indeterminate sentencing scheme in which the trial court was required to sentence a defendant to the minimum *and* maximum provided by law. *State v. Wilson,* 2001–NMCA–032,

¶ 18, 130 N.M. 319, 24 P.3d 351, *abrogated on other grounds by State v. Montoya,* 2005–NMCA–078, 137 N.M. 713, 114 P.3d 393. How long a defendant was actually imprisoned rested within the discretion of the parole board. *Id.*

impose a "basic sentence" of a "definite term" within that range. *Id.* § 4(A). In exercising this discretion, a judge could consider any facts he or she deemed relevant-including those not presented to the jury. *See State v. Montoya,* 91 N.M. 425, 427, 575 P.2d 609, 611 (Ct.App.1978) ("[A] sentencing judge has wide discretion in the sources and types of information used in determining the punishment to be imposed."). For example, although the CSA required a judge to impose a basic sentence for a third-degree felony, the judge was free to fully exercise his or her discretion in setting the basic sentence at anywhere between two and ten years. CSA § 4(A)(3). As enacted, the CSA posed no Sixth Amendment problem since the judge's discretion to establish the basic sentence was authorized solely by a jury verdict or plea.

{8} In 1979, the Legislature amended portions of the CSA. 1979 N.M. Laws, ch. 152, at §§ 1–4. The amendments, with a few others made later not pertinent to the case at hand, remain effective. Most significantly, the amendments changed the way in which the basic sentence is determined. Instead of the judge exercising discretion to choose a basic sentence from a given range, the basic sentence for each degree of felony is now set at an exact amount. Section 31–18–15(A). As it applies to this case, instead of being allowed to choose a basic sentence anywhere from two to ten years imprisonment for a third-degree felony, a judge is now *required* to impose a basic sentence of three years imprisonment-no more, no less. Section 31–18–15(A)(5), (B). At the same time the amendments mandated the imposition of set terms of imprisonment, another provision added in 1979 allowed the sentencing judge to alter the basic sentence upward or downward by one-third "upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." Section 31–18–15.1(A).

## B. The Effect of the *Apprendi* Line of Cases on Modern Sentencing Schemes

{9} In 2000, the United States Supreme Court published *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), setting off a tumult in modern sentencing schemes throughout the nation. In *Apprendi,* the defendant pled guilty to, among other things, the crime of possessing a firearm for an unlawful purpose, a second-degree offense in New Jersey. *Id.* at 469–70, 120 S.Ct. 2348. New Jersey law provided for a sentencing range of five to ten years for a second-degree offense. *Id.* at 470, 120 S.Ct. 2348. A hate-crime statute allowed the sentencing court to impose an "enhanced" sentence of up to twenty years if the defendant's possession of a firearm was for a biased purpose. *See id.* After finding by a preponderance of the evidence that the hate-crime statute applied, the judge sentenced the defendant to twelve years on the possession charge-two years above the statutory maximum of ten years. *Id.* at 471, 120 S.Ct. 2348. The Supreme Court held the defendant's sentence to be unconstitutional, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. At the same time, however, the Court took pains to emphasize that it is entirely constitutional "for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute." *Id.* at 481, 120 S.Ct. 2348. Thus, had the judge exercised discretion in choosing a sentence anywhere between five and ten years, there would have been no constitutional problem since any penalty within that range would not have been above "the prescribed statutory maximum." *Id.* at 490, 120 S.Ct. 2348.

{10} Soon after *Apprendi,* the Court of Appeals addressed the argument that an upward alteration of a defendant's basic sentence pursuant to Section 31–18–15.1 was unconstitutional because the aggravating circumstances were not found by a jury beyond a reasonable doubt. *Wilson,* 2001–NMCA–032, ¶ 3, 130 N.M. 319, 24 P.3d 351. In sum, the question after *Apprendi* became whether "the prescribed statutory maximum" was the basic sentence mandated by Section 31–18–15(A) or whether Section 31–18–15.1 established a sentencing range in which a judge

could exercise his or her discretion in choosing a sentence.[3] *Id.* ¶¶ 13, 17. The Court of Appeals thought the answer turned on legislative intent. *Id.* ¶ 17. Ultimately, the court held:

> [T]hat the authority of the sentencing court, namely to determine where within the range a particular criminal defendant should be sentenced, has not changed since the 1977[law] implemented determinate sentencing within a range of years and gave the trial court the authority to impose a sentence of a definite term of years within that range. Rather, we understand the current scheme to be a means of protecting defendants, in a way that was not present from 1977 to 1979, from arbitrary sentencing decisions without the possibility of any appellate review.

*Id.* ¶ 21. *Wilson* distinguished our sentencing scheme from that of *Apprendi* and other schemes found unconstitutional after *Apprendi* on the grounds that our scheme does not (1) enumerate specific factors that must be found or (2) set specific presumptive ranges for its "basic sentence" that a judge is later allowed to exceed. *Id.* ¶ 26.

{11} After *Wilson,* the United States Supreme Court decided *Blakely.* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. In *Blakely,* the defendant pled guilty in Washington to second-degree kidnaping involving domestic violence and a firearm. *Id.* at 298–99, 124 S.Ct. 2531. At the time of the defendant's sentencing, Washington law provided that second-degree kidnaping was a class B felony and that no person convicted of a class B felony could be imprisoned for more than ten years. *Id.* at 299, 124 S.Ct. 2531. Another sentencing provision tempered the first statute by providing that, considering the defendant's criminal history and his particular offense of second-degree kidnaping with a firearm, the "standard range" of imprisonment was to be 49 to 53 months. *See id.* Washington law further provided that a judge could deviate upward from the "standard range" only upon finding " 'substantial and compelling reasons justifying an excep-

tional sentence.' " *Id.* (quoting Wash. Rev. Code Ann. § 9.94A.120(2)). Although numerous aggravating factors justifying an exceptional sentence were listed by statute, the list was illustrative and not exhaustive. *Id.* Based on the judge's determination that the defendant had acted with "deliberate cruelty" in committing his offense, the judge sentenced the defendant to 90 months–37 months greater than the "standard maximum," but still within the maximum of 120 months provided for a class B felony. *Id.* at 300, 124 S.Ct. 2531.

{12} Relying on *Apprendi,* the defendant in *Blakely* argued that he was deprived of his constitutional right to have all facts essential to his sentence determined by a jury beyond a reasonable doubt. *See id.* at 301, 124 S.Ct. 2531. The State of Washington countered with the argument "that there was no *Apprendi* violation because the relevant 'statutory maximum' [was] not 53 months, but the 10–year maximum for class B felonies." *Id.* at 303, 124 S.Ct. 2531. The Supreme Court rejected this argument:

> Our precedents make clear ... that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."

*Id.* at 303–04, 124 S.Ct. 2531 (citations omitted). Notwithstanding the dissent of two justices, the Court held it immaterial that, unlike *Apprendi,* the enumerated grounds for departing from the standard sentence were illustrative rather than exhaustive. *Id.* at 305, 124 S.Ct. 2531; *see id.* at 325, 124 S.Ct. 2531 (O'Connor, J., dissenting) ("[T]he 'extraordinary sentence' provision struck down today is as inoffensive to the holding of *Apprendi* as a regime of guided discretion could possibly be. The list of facts that

---

**3.** There can be no doubt that *any* sentence imposed pursuant to the CSA as enacted in 1977 would pass constitutional muster under *Apprendi* because any sentence imposed pursuant to that act would clearly fall within the range prescribed by statute and, thus, would never be above "the prescribed statutory maximum."

justify an increase in the range is nonexhaustive.").

{13} Within six months of *Blakely,* the Court of Appeals decided Frawley's case. *Frawley,* 2005–NMCA–017, 137 N.M. 18, 106 P.3d 580. The court in *Frawley* believed *Blakely* "clarifie[d] and extend[ed] *Apprendi*" such that Frawley's "enhancements" pursuant to Section 31–18–15.1 were unconstitutional. *Id.* ¶ 13. Specifically, the Court of Appeals interpreted *Blakely* as follows:

> When the jury considers the facts relevant to the elements of an offense in determining guilt or innocence, the criminal sanctions for that offense cannot be increased after the verdict based on facts the jury has not specifically considered in connection with its finding of guilt, whether or not the facts are labeled "sentencing factors," and even if the facts are not material to the statutory elements of the offense.

*Id.* ¶ 12.

{14} Between the time the Court of Appeals decided *Frawley* and our granting of certiorari in that case, the United States Supreme Court published *Booker,* a case that consolidated the cases of two defendants-Booker and Fanfan. 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. *Booker* is a unique case in that its holding is divided into two parts (what we term the "substantive" and "remedial" parts), each with a separate author and each only garnering five votes.[4] The substantive portion of *Booker,* authored by Justice Stevens, held that the federal sentencing guidelines were unconstitutional after *Blakely. Id.* at 243–44, 125 S.Ct. 738 (opinion of Stevens, J.). The remedial part of *Booker,* authored by Justice Breyer, remedied the constitutional deficiencies of the guidelines by severing the provision of the governing statutes that made the guidelines mandatory along with another provision that relied on the mandatory nature of the guidelines. *Id.* at 245–46, 125 S.Ct. 738 (opinion of Breyer, J.).

{15} Booker was given an enhanced sentence, which was contrary to the result in Fanfan's trial. "Based upon Booker's criminal history and the quantity of drugs found by the jury, [92.5 grams of crack,] the Sentencing Guidelines required the District Court Judge to select a 'base' sentence of not less than 210 nor more than 262 months in prison." 543 U.S. at 227, 125 S.Ct. 738 (opinion of Stevens, J.). At sentencing, however, the judge determined that Booker had actually possessed an additional 566 grams of crack and had also obstructed justice. *Id.* Based on those judicial findings, the judge imposed a guidelines-mandated sentence within the range of 360 months to life imprisonment. *Id.* Fanfan was found guilty of conspiracy to distribute and to possess with intent to distribute at least 500 grams of cocaine. *Id.* at 228, 125 S.Ct. 738. The guidelines authorized a sentence of no more than 78 months imprisonment. *Id.* The judge at sentencing found additional facts by a preponderance of the evidence that authorized a sentence of 188–235 months imprisonment. *Id.* Based partly on *Blakely,* however, the judge concluded that imprisoning Fanfan to anything greater than 78 months would violate Fanfan's Sixth Amendment right to a trial by jury. *See id.* at 228–29, 125 S.Ct. 738.

{16} In the substantive part of *Booker,* the majority held that there was no constitutional distinction between the Federal Sentencing Guidelines and the Washington sentencing scheme.[5] *Id.* at 233, 125 S.Ct. 738; *see also Blakely,* 542 U.S. at 325, 124 S.Ct. 2531 (O'Connor, J., dissenting). Critically, what made the two schemes identical for purposes of the Sixth Amendment was the fact "that the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges." *Booker,* 543 U.S. at 233, 125 S.Ct. 738 (opinion of Stevens, J.). Although the substantive majority did not address the fact that the Washington system *allowed* for a judge to impose a greater sentence after making certain findings, it was

---

4. Justice Ginsburg was the only justice common to each part of *Booker.*

5. Whereas Fanfan's sentence was constitutional, Booker's was not because he was sentenced in accordance with facts found not by the jury beyond a reasonable doubt, but by a judge by the preponderance of evidence. *See Booker,* 543 U.S. at 267, 125 S.Ct. 738 (opinion of Breyer, J.).

clear that the federal system *"required* [ ] the selection of particular sentences in response to differing sets of facts."[6]   *Id.* (emphasis added).   In summation, the majority in the substantive portion of the opinion stated:

> [E]veryone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.*

{17} After considering what Congress would have done had it known of the constitutional deficiency, the remedial majority of *Booker* severed the provision of the statute making the guidelines mandatory from the rest of the Act, *see* 18 U.S.C.A. § 3553(b) (Supp.2004) (providing that "the court *shall* impose a sentence of the kind, and within the range, [as set forth in the guidelines]"), and the provision setting forth standards of review on appeal that relied on the first provision, *see* 18 U.S.C.A. § 3742(e) (2000 & Supp. 2004).   *Booker,* 543 U.S. at 259–60, 125 S.Ct. 738 (opinion of Breyer, J.).   As modified, the Act "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."   *Id.* at 245–46, 125 S.Ct. 738 (citations omitted).   Thus, after *Booker* the federal sentencing guidelines are "effectively advisory," *id.* at 245, 125 S.Ct. 738, and a judge's sentencing decision is reviewed to determine if the sentence is unreasonable, *id.* at 261, 125 S.Ct. 738.

## C.   Our Decision in *Lopez* to Uphold New Mexico's Sentencing Scheme

{18} After *Booker,* but while Frawley's case was still pending, we published *Lopez,* a case in which the defendant challenged, *inter*

alia, his aggravated sentence for conspiracy to commit first-degree murder.   *See Lopez,* 2005–NMSC–036, ¶¶ 18, 29, 138 N.M. 521, 123 P.3d 754.   Citing the California case of *Black I,* we stated that "[a]fter *Booker,* we are not persuaded *Frawley* was correctly decided."   *Id.* ¶ 36 (citing *Black I,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534).   The California sentencing scheme analyzed in *Black I* resembled our own in that a California judge was required to sentence a defendant to a precise "middle term, unless there [were] circumstances in aggravation or mitigation of the crime," in which case the judge could impose an upper or lower term.   *See Black I,* 29 Cal.Rptr.3d 740, 113 P.3d at 538 (internal quotation marks and citation omitted).   Moreover, although certain aggravating factors were listed in the governing statute, "the judge [was] free to consider any additional criteria reasonably related to the decision being made."   *Id.* (internal quotation marks and citation omitted).   Ultimately, the court in *Black I* held that the upper term was the relevant statutory maximum for *Apprendi* purposes since the only thing limiting a judge's ability to impose the upper term was the requirement that the exercise of his or her discretion be reasonable.   *See id.* 29 Cal.Rptr.3d 740, 113 P.3d at 545.   Although we recognized that the majority of the few state courts reaching the issue had held that *Blakely* "requires a state court to equate the presumptive sentence in a determinate sentencing scheme with the punishment authorized by the jury's verdict," we explicitly rejected that position and sided with *Black I.* *Lopez,* 2005–NMSC–036, ¶ 53, 138 N.M. 521, 123 P.3d 754.

{19} We agreed with *Black I* that "the United States Supreme Court cases ought not be viewed as 'draw[ing] a bright line.' " *Id.* ¶ 46 (quoting *Black I,* 29 Cal.Rptr.3d 740, 113 P.3d at 547) (alteration in original).   Important to our reliance on *Black I* was that court's view that *Blakely* and *Booker* " 'es-

---

**6.** The constitutional problem arises when a base sentence is mandated and the sentencing scheme only allows a judge to deviate from that mandated sentence upon finding certain facts.   *See Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005) (concluding its sentencing scheme to be uncon-

stitutional "not because it mandate[d] a 'fixed term' sentence for each felony, but because it mandate[d] *both* a fixed term and permit[ted] judicial discretion in finding aggravating . . . circumstances to deviate from the fixed term."

tablished a constitutionally significant distinction between a sentencing scheme that permits judges' to exercise judicial discretion within a range and one 'that assigns to judges the type of factfinding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense.'" *Id.* ¶ 54 (quoting *Black I*, 29 Cal. Rptr.3d 740, 113 P.3d at 542). Ultimately, just as the Court of Appeals did in *Wilson*, in holding our sentencing scheme constitutional we relied on what we believed our Legislature intended by the 1979 amendments. *Id.* ¶ 55. Specifically, we concluded that our Legislature's intent behind the amendments was only "to limit the trial court's discretion to punish *within a range* by taking into consideration a wide range of circumstances, and to provide for meaningful appellate review." *Id.* ¶ 55 (emphasis added). Thus, we concluded that our sentencing scheme "so construed" posed no constitutional problem because, under this analysis, the "statutory maximum" for *Blakely* purposes would be the basic sentence plus one-third. *See id.*

### D. The Supreme Court's Recent Decision in *Cunningham*

{20} *Lopez* has been put into question by the United States Supreme Court's recent case of *Cunningham*, which overturned *Black I*.[7] *See Cunningham*, — U.S. at —, 127 S.Ct. at 871. The Supreme Court in *Cunningham* held that allowing a judge to impose an "upper term" sentence on a finding of aggravating circumstances was unconstitutional because it bypassed the jury's role as factfinder. *See id.* In essence, because "aggravating circumstances depend on facts found discretely and solely by the judge . . ., the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *Id.* at 868. The Supreme Court reiterated that this was a "bright-line" rule, *id.*, and thought it "remarkabl[e]" that *Black I* believed it was not, *id.* at 869. According to the Court, "'[t]hat should be the end of the matter.'" *Id.* at 868 (quoting *Blakely*, 542 U.S. at 313, 124 S.Ct. 2531) (alteration in original). Finally, *Cun-*

ningham soundly rejected California's argument that the Supreme Court should defer to its construction of state law:

> The *Black I* court did not modify California law so as to align it with this Court's Sixth Amendment precedent. Rather, it construed this Court's decisions in an endeavor to render them consistent with California law. The *Black I* court's interpretation of federal constitutional law plainly does not qualify for this Court's deference.

*Id.*, — U.S. at —, 127 S.Ct. at 871 n. 16 (citation omitted).

{21} Thus, the Supreme Court rejected the California Supreme Court's effort to interpret its statute as an actual *range* in which the judge could choose a sentence:

> Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." California's Legislature has adopted *sentencing triads*, three fixed sentences with *no ranges* between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 *to* 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 *or* 16 years.

*Id.*, — U.S. at —, 127 S.Ct. at 870 (citation omitted) (emphasis added).

### III. APPLICATION OF *CUNNINGHAM*

■ {22} We have no choice but to conclude that Frawley's sentence was altered upwards in contravention of the Sixth Amendment and that we must overrule *Lopez*. In New Mexico the basic sentence for a noncapital felony shall be imposed unless the court alters such sentence. Section 31–18–15(B). The only relevant factors our Legislature took into account in establishing the basic sentence were the basic elements for each felony. *See Swafford v. State*, 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991) ("[T]he elements of the offense are ipso facto incorporated by the legislature into the base level sentencing for the offense."). A sentencing

---

7. *Cunningham* was decided 6–3 and was authored by Justice Ginsburg—the only justice con-

curring in both parts of *Booker*.

judge may exercise discretion to increase the basic sentence only after the judge finds aggravating circumstances. Section 31–18–15.1(A). And, notwithstanding the broad statutory language implying that a judge in New Mexico may alter a sentence upward in *any* case, the actual fact is that a judge's discretion to do so is quite limited. Long ago, we construed Section 31–18–15.1 to mean that the State must actually seek "enhancement" of a basic sentence on grounds of aggravating circumstances by filing a pleading so that the defendant may have "notice of the specific aggravating factors *on which the state intends to rely.*" *Caristo v. Sullivan,* 112 N.M. 623, 631, 818 P.2d 401, 409 (1991) (emphasis added). In other words, in actual day-to-day operation of our sentencing laws, it is the *State's* discretion, rather than the judge's, that must be exercised before a sentence may be aggravated. In summary, once a sentencing judge in New Mexico is asked by the State to exercise discretion to increase a basic sentence, the aggravation cannot be based on "elements of either the offense for which the defendant was sentenced *or* a separate, but contemporaneous, conviction," *Swafford,* 112 N.M. at 16, 810 P.2d at 1236, and the judge must state on the record his or her reasons for increasing the sentence to facilitate appellate review, *State v. Segotta,* 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983).

{23} Thus, adhering to the Supreme Court's repeated admonishments in *Cunningham* regarding the bright-line nature of its rule first established in *Apprendi,* we recognize that the Sixth Amendment is violated *any time* a defendant is sentenced above what is authorized *solely* by the jury's

verdict alone. *See Cunningham,* — U.S. at —, 127 S.Ct. at 868. Taken literally, the Supreme Court's mandate means that *any* sentence above the basic sentence contained in our sentencing statutes as written violates the Sixth Amendment because, based solely on the jury verdict (or plea agreement admitting only to the elements of the crime), a judge may not alter the basic sentence upwards without affirmatively establishing facts.[8] Put another way, the question before us is simply "whether [our] law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." *Rita,* — U.S. at —, 127 S.Ct. at 2466. Because it is undeniable that the answer to that question is "yes," we overrule *Lopez* and hold that Frawley's aggravated sentences are unconstitutional.[9]

{24} In *Lopez* the majority sought to rely on legislative intent in order to hold our sentencing scheme constitutional. *See Lopez,* 2005–NMSC–036, ¶ 55, 138 N.M. 521, 123 P.3d 754. As the Supreme Court emphasized in *Cunningham,* however, legislative intent is of no consequence here. *See Cunningham,* — U.S. at —, 127 S.Ct. at 871 n. 16 (disregarding the California court's construction of California law). While it may be a fact that our Legislature intended a scheme that passes constitutional muster, that is an entirely separate question from whether it in fact does so.[10] Thus, we hold that Frawley was unconstitutionally sentenced when the judge aggravated his third-degree felony sentences from two years to three years based on his findings of certain aggravating circumstances.

---

8. Similar to the statute at issue in *Cunningham,* the language in our statute refers to "circumstances" rather than "facts." *Compare* Cal.Penal Code § 1170 (West 2006), *with* NMSA 1978, § 31–18–15.1. This semantic difference is meaningless for constitutional purposes since a judge will necessarily find facts when he or she finds that certain circumstances warranting an aggravated sentence exist.

9. In revisiting *Black I,* the California Supreme Court upheld Black's sentence. *People v. Black I,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2007). The California court found two aggravating factors that passed constitutional mus-

ter: Black's prior convictions and a specific finding by the jury. *Id.* 62 Cal.Rptr.3d 569, 161 P.3d at 1143–44. Neither of those factors help in this case. We are prohibited from considering prior convictions as an aggravating factor. Section 31–18–15.1(B). Furthermore, the jury was given *no special interrogatories that would establish* aggravating circumstances.

10. As will be seen, although not pertinent to the substantive question of whether Section 31–18–15.1 is constitutional, legislative intent is critical when devising a *remedy* to any constitutional violation. *See infra* ¶ 29.

## IV. SECTION 31–18–15.1 IS FACIALLY UNCONSTITUTIONAL

{25} Having determined that the aggravation of Frawley's sentences was unconstitutional, the next determination we must make is whether Section 31–18–15.1 is facially unconstitutional or whether it was merely unconstitutionally applied to this case. This is important since, if the statute was constitutional on its face but unconstitutionally applied, we would simply remand to the trial court with instructions to sentence Frawley consistent with Section 31–18–15.1 in a constitutional manner. At least two courts have concluded in the wake of *Apprendi* and its progeny that their sentencing schemes could be constitutionally applied without modification. *State v. Dilts,* 337 Or. 645, 103 P.3d 95, 100 (2004) (en banc); *Lopez v. People (Robert Lopez* ), 113 P.3d 713, 726 (Colo.2005) (en banc). We conclude, however, that our sentencing regime differs from those analyzed in *Lopez* and *Dilts* and that section 31–18–15.1 is facially unconstitutional because, as written, it can never be applied in a manner consistent with the Sixth Amendment.

{26} In Oregon at the time of *Dilts,* a sentencing judge was required to impose a sentence within a presumptive range "unless there [were] 'substantial and compelling' reasons in aggravation or mitigation." *Dilts,* 103 P.3d at 100 (quoted authority omitted). Based on its finding that the defendant's crime had been racially motivated, the trial court imposed a sentence greater than the maximum presumptive sentence. *Id.* at 96–97. Although the Oregon Supreme Court held that, in light of *Blakely,* the defendant had been unconstitutionally sentenced, it did not declare its sentencing provision to be unconstitutional per se. *See id.* at 99–100. The court concluded that its "holding simply require[d] Oregon courts to apply [its] guidelines 'in a way that respects the Sixth Amendment.'" *Id.* at 100 (quoting *Blakely,* 542 U.S. at 308, 124 S.Ct. 2531). Without directing the trial court what to do on remand, the court noted that *Blakely* required the jury to find the aggravating facts or for the defendant to waive his right to this jury determination. *Id.*

{27} Our statute cannot be salvaged as the Oregon statute was in *Dilts.* The Oregon Supreme Court concluded that Oregon law did not preclude the jury from finding aggravating factors. *Id.* In contrast, our law does preclude jury findings by requiring a sentencing hearing where the sentencing "court may alter the basic sentence … upon a finding *by the judge* of any mitigating or aggravating circumstances." Section 31–18–15.1(A) (emphasis added). Moreover, since current New Mexico law precludes a jury from determining aggravating facts, our law does not provide for a defendant to *waive* his or her right to this jury determination.

{28} In *Robert Lopez,* the defendant was arrested for and pled guilty to possession of cocaine-the presumptive sentence for the charge was two to six years of imprisonment followed by three years of parole. *Robert Lopez,* 113 P.3d at 716–17. After finding several aggravating factors, the trial court aggravated the defendant's sentence beyond the presumptive range and sentenced him to twelve years of imprisonment. *Id.* at 719. Nevertheless, the Colorado Supreme Court held that the defendant's aggravated sentence was not unconstitutional since the relevant statute was applied in a constitutional manner. *See id.* The gravamen of the court's reasoning in *Robert Lopez* was that since one of the aggravating factors the trial court relied upon was the defendant's "prior conviction" of vehicular homicide, and since "[p]rior conviction facts are *Blakely*-exempt," the aggravated sentence was constitutionally sound. *Id.* at 730; *see Blakely,* 542 U.S. at 301, 124 S.Ct. 2531 (" 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348)). Thus, the relevant statutory provision was not facially unconstitutional since "aggravated sentencing [could] be based on constitutionally authorized facts, depending on the circumstances of a particular case." *Robert Lopez,* 113 P.3d at 728. Our scheme differs from that of Colorado's analyzed in *Robert Lopez:* in New Mexico, a judge is explicitly precluded from using a "prior felony conviction[ ] as [an] aggravating

circumstance[ ] for the purpose of altering the basic sentence." Section 31–18–15.1(B).

{29} Based on *Dilts* and *Robert Lopez*, we are left with the conviction that Section 31–18–15.1 may never be constitutionally applied. First, the statute *requires* a judge to find the aggravating circumstances. Section 31–18–15.1(A). Second, the one judicial finding that is *"Blakely-exempt"* is specifically precluded by Section 31–18–15.1 from being used as an aggravating circumstance. *Compare* § 31–18–15.1(B) *with Blakely*, 542 U.S. at 301, 124 S.Ct. 2531.

{30} Having concluded that Section 31–18–15.1 is facially unconstitutional, we turn to the issue of whether we should attempt to temporarily remedy the constitutional deficiency. It is a fundamental principle that we cannot rewrite or add language to a statute in order to make it constitutional. *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 479 & n. 26, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (recognizing that courts have an "obligation to avoid judicial legislation" and therefore "refus[ing] to rewrite the statute" at issue in the case). Thus, the question of how to ultimately fix the constitutional problem inherent in our sentencing scheme lies with the Legislature. *Id.* However, it is equally fundamental

> that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

*Bradbury & Stamm Constr. Co. v. Bureau of Revenue*, 70 N.M. 226, 230–31, 372 P.2d 808, 811 (1962); *see also Giant Indus. Ariz., Inc. v. Taxation & Revenue Dep't*, 110 N.M. 442, 444, 796 P.2d 1138, 1140 (Ct.App.1990). This principle of statutory construction is now codified. NMSA 1978, § 12–2A–9 (1997). Numerous courts-including, of course, the United States Supreme Court in *Booker*-have used the remedy of severability in one fashion or another in order to preserve their sentencing schemes until their respective legislative bodies could act. *See Booker*, 543 U.S. at 245–46, 125 S.Ct. 738 (severing requirement that guidelines be mandatory); *Smylie v. State*, 823 N.E.2d 679, 685–86 (Ind. 2005) (severing requirement that a judge find aggravating factors); *State v. Shattuck*, 704 N.W.2d 131, 144 (Minn.2005) (severing guideline provision allowing for an "upward durational departure" based on judicial factfinding); *State v. Natale*, 184 N.J. 458, 878 A.2d 724, 741 (2005) (severing presumptive terms); *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 497 (2006) (severing numerous provisions "because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption").

{31} In its briefing, the State suggests, as a remedy, deleting the words "upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender" from Section 31–18–15.1, which it contends would allow a judge to aggravate a sentence without finding facts. We conclude that, even assuming such judicial surgery would pass our tests for severability, the State's suggested remedy would be insufficient.

{32} After applying the State's suggested approach, the statute would read as follows:

> The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and to take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31–18–15 NMSA 1978. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case.

Whitewashing the clause containing the word "finding" from the statute would not make Section 31–18–15.1 constitutional since, when determining if aggravating circumstances exist, a judge would *still* be finding facts. In essence, the State would have us take what is explicit and make it implicit. The Sixth Amendment requires something more. *Cf.*

*Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348 ("[T]he relevant inquiry is one not of form, but of effect . . . [.]").

{33} Similar to our sister state of Arizona, we decline to further address any other remedy or any other of the myriad questions that may arise from today's holding. *See State v. Brown,* 209 Ariz. 200, 99 P.3d 15, 18 (2004) (en banc) (answering only the substantive constitutional question since it was the only issue answered below). The issue has not been adequately briefed and the question of how to ultimately fix the constitutional problem lies with the Legislature.

## V. OUR HOLDING APPLIES PROSPECTIVELY

{34} Having concluded that Section 31–18–15.1 is facially unconstitutional after *Cunningham,* the question remains whether our holding applies prospectively or retroactively. The answer to this question turns on whether the rule we announce is old or new under the analysis set forth in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Whorton v. Bockting,* —— U.S. ——, ——, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007). If it is an old rule, it applies "both on direct and collateral review." *Id.* If it is a new rule, it generally applies "only to cases that are still on direct review." *Id.* A new rule, however, may apply "retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citations and internal quotation marks omitted) (alteration in original).

{35} "A new rule is defined as a rule that . . . was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at ——, 127 S.Ct. at 1181 (citations and internal quotation marks omitted) (alteration in original). Using this definition of a new rule, the Supreme Court has determined that a court establishes a new rule when its decision is "flatly inconsistent with the prior governing precedent" and is an "explicit overruling of an earlier holding."

*Id.* (citations and internal quotation marks omitted).

{36} After *Apprendi,* a number of New Mexico cases upheld enhanced sentences based on a finding of aggravating circumstances by the trial judge. The first of these cases was *State v. Wilson,* which held that Section 31–18–15.1 is constitutional under *Apprendi.* 2001–NMCA–032, ¶ 4, 130 N.M. 319, 24 P.3d 351. The Court of Appeals followed *Wilson* when faced with other *Apprendi* challenges to enhanced sentences. *State v. Morales,* 2002–NMCA–016, ¶ 4, 131 N.M. 530, 39 P.3d 747; *State v. Fike,* 2002–NMCA–027, ¶ 22, 131 N.M. 676, 41 P.3d 944. Our holding today, requiring that a jury and not a trial judge must find aggravating circumstances beyond a reasonable doubt, goes against our own line of cases in *Wilson,* and thus announces a new rule.

{37} Our conclusion is consistent with *Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). In that case, the Supreme Court determined that a change in sentencing law created a new rule. The defendant in *Schriro* had been sentenced to death under Arizona law, and his sentence had been affirmed on direct review. *Id.* at 350, 124 S.Ct. 2519. The defendant filed a federal habeas petition. *Id.* While that appeal was pending, the Supreme Court decided in *Ring v. Arizona* that Arizona's death penalty was unconstitutional under *Apprendi* because the judge, not the jury, determined whether there were sufficient aggravating circumstances to impose a death sentence. *Id.* at 350–51, 124 S.Ct. 2519 (citing *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)). The Supreme Court implicitly concluded that *Ring* had announced a new rule when it began its *Schriro* analysis by considering whether any of the *Teague* "new rule" exceptions applied. *See id.* at 351–52, 124 S.Ct. 2519; *see also Ring,* 536 U.S. at 609, 122 S.Ct. 2428 (holding that *Apprendi* was irreconcilable with *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and explicitly overruling *Walton* ).

{38} Our opinion today meets the *Whorton* test for establishment of a new rule. Like *Ring,* we overrule an earlier case, *Lopez,*

2005–NMSC–036, 138 N.M. 521, 123 P.3d 754, that allowed a judge to find aggravating facts to enhance a sentence. As *Schriro* held, this creates a new rule. Because we announce a new rule, it can only be applied retroactively if it meets one of the two *Teague* exceptions: namely, it must be either a substantive rule or a "watershed" rule of criminal procedure. The new rule we announce today does not satisfy either exception.

## A. *Frawley* Announces a Procedural Rule

{39} "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353, 124 S.Ct. 2519. In contrast, "[a] decision that modifies the elements of an offense is normally substantive rather than procedural." *Id.* at 354, 124 S.Ct. 2519. Rules that require a jury, not a judge, to "find the essential facts bearing on punishment" are "prototypical procedural rules." *Id.* at 353, 124 S.Ct. 2519.

{40} In *Ring*, the Supreme Court required that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." *Ring*, 536 U.S. at 609, 122 S.Ct. 2428. This holding had no effect on what factors would subject a defendant to Arizona's death penalty, but rather it merely required that the jury, not the judge, determine whether conduct punishable by death had occurred. *Schriro*, 542 U.S. at 353, 124 S.Ct. 2519. The Court explained that "the range of conduct punished by death in Arizona was the same before *Ring* as after." *Id.* at 354, 124 S.Ct. 2519. Had the Supreme Court changed the required conduct warranting punishment, the holding would have been substantive, not procedural. *Id.* at 354, 124 S.Ct. 2519.

{41} Our holding today likewise announces a procedural rule because, as in *Ring*, it affects only Frawley's sentence, not his conviction. *See Ring*, 536 U.S. at 595, 122 S.Ct. 2428. The requirements for conviction of felony child abuse, and for any other crime, remain the same after this case as before. All that has changed is that the jury, not the judge, must find the facts necessary to aggravate a sentence.

## B. *Frawley* Is Not a Watershed Rule of Criminal Procedure

{42} A watershed rule must meet two requirements: (1) it "must be necessary to prevent an impermissibly large risk of an inaccurate conviction"; and (2) it "must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, — U.S. at —, 127 S.Ct. at 1182 (citations and internal quotation marks omitted). The watershed exception is extremely narrow; since *Teague*, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status." *Id.* at 1181–82. In fact, only one case has ever met the test: *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), decided 26 years before *Teague*. *Whorton*, — U.S. at —, 127 S.Ct. at 1182.

{43} In the context of factors for sentencing, the Supreme Court rephrased the watershed test as "whether judicial factfinding so *seriously* diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Schriro*, 542 U.S. at 355–56, 124 S.Ct. 2519 (citations and internal quotation marks omitted) (alteration in original). The Supreme Court noted that "for every argument why juries are more accurate factfinders, there is another why they are less accurate." *Id.* at 356, 124 S.Ct. 2519. Because of this disagreement, it was impossible for the Supreme Court to determine whether "judicial factfinding *seriously* diminishes accuracy" in sentencing. *Id.* We conclude that our ruling today does not stand out as a watershed case because, like *Schriro*, it merely shifts factfinding from the judge to the jury. *See id.* at 353, 124 S.Ct. 2519. The Supreme Court has held that such a shift in factfinding is insufficient to meet the narrow watershed exception. *See id.* at 355–57, 124 S.Ct. 2519.

{44} Other courts have determined that changes in sentencing laws do not meet the *Teague* test for retroactive application. Our holding today is based on *Cunningham*, — U.S. —, 127 S.Ct. 856, which in turn is

based on the *Apprendi–Booker–Blakely* line of cases. Our research has not disclosed a case where a court has given the *Apprendi–Booker–Blakely* line of cases retroactive effect in federal habeas proceedings. *Lopez v. Campbell*, No. 1:05–cv–00481–LJO–TAG HC, 2007 WL 2500424, *3 (E.D.Cal. Aug.30, 2007); *see also United States v. Price*, 400 F.3d 844, 846, 849 (10th Cir.2005) (finding that *Blakely* is a new procedural rule that does not qualify for *Teague* exceptions); *Humphress v. United States*, 398 F.3d 855, 861–63 (6th Cir.2005) (reaching same conclusion for *Booker*); *United States v. Mora*, 293 F.3d 1213, 1218–19 (10th Cir.2002) (reaching same conclusion for *Apprendi*). Accordingly, our holding today is only to be given prospective application.

## VI. CONCLUSION

{45} Section 31–18–15.1 is facially unconstitutional after *Cunningham*. We remand this case to the district court so that it may resentence Frawley on his third-degree felony convictions to no more than the basic sentence of three years.

{46} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA and RICHARD C. BOSSON, Justices.

PETRA JIMENEZ MAES, Justice (dissenting).

MAES, Justice (dissenting).

{47} The issue in this case is whether NMSA 1978, Section 31–18–15.1 (1993), presents a statutory range within which a judge may exercise discretion, as we held in *State v. Lopez*, 2005–NMSC–036, 138 N.M. 521, 123 P.3d 754, or whether a different interpretation under *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), requires that we render this section unconstitutional. The majority chooses to read elements into this statute to make it unconstitutional. I believe that *Cunningham* does not change our holding in *Lopez* and Section 31–18–15.1 is valid in both form and function.

{48} In matters of statutory interpretation, where varying interpretations are pre-sented, typically the Court will seek out the constitutionally permissible interpretation of a statute. *See State v. Flores*, 2004–NMSC–021, ¶ 16, 135 N.M. 759, 93 P.3d 1264. In *Flores*, this Court reversed a district court order that found the statutory process for determining whether a defendant is mentally retarded, as a mitigating factor in capital murder cases, unconstitutional. *Id.* ¶ 1. Similar to the present case, the defendant in *Flores* challenged the statute based on his Sixth Amendment right to a jury trial. *See Id.* ¶ 2; NMSA 1978, § 31–20A–2.1 (1991). In its analysis, the Court found that for the statute to be constitutional, "the sentencing jury in a capital trial must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Flores*, 2004–NMSC–021, ¶ 14, 135 N.M. 759, 93 P.3d 1264 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)) (internal quotation marks omitted). Accordingly, the Court stated that "to the extent Section 31–20A–2.1(C) may be construed to restrict the jury's opportunity to consider and give mitigating effect to other evidence probative of mental retardation, such restriction would fail to comply with the rule of *Lockett, Eddings*, and *Penry*." *Id.* ¶ 16; *see Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ("[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.") (Burger, C.J., plurality opinion) (emphasis omitted); *Eddings v. Oklahoma*, 455 U.S. 104, 113–14, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.") (emphasis omitted). Recognizing two possible interpretations of the statute, the Court chose the interpretation that rendered the statute constitutional: "Because construing Section 31–20A–2.1(C) as restricting the defendant's right to present other evidence of

mental retardation would render that restriction unconstitutional, we instead construe Section 31–20A–2.1(C) so as to permit the defendant to introduce any admissible evidence of mental retardation." *Flores,* 2004-NMSC-021, ¶ 16, 135 N.M. 759, 93 P.3d 1264. "[I]f a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality." *Huey v. Lente,* 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973). In the present case, I believe we should adhere to the statutory construction of Section 31–18–15.1 provided by *Lopez,* as it is the constitutional interpretation of the statute.

{49} *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *Cunningham* are the corpus of constitutional jurisprudence regarding sentencing schemes and a defendant's right to a jury trial. *Apprendi* and its progeny do not completely bar judges from making factual findings to enhance a sentence. In *Apprendi,* the Court stated that when sentencing offenders, it is permissible "for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute." *Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348. Similarly, *Blakely* explicitly stated, "Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion." *Blakely,* 542 U.S. at 309, 124 S.Ct. 2531. *Cunningham* confirmed these holdings. *Cunningham,* 127 S.Ct. at 871 (noting that several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing by calling upon the jury to find any fact necessary to the imposition of an elevated sentence, or by permitting judges " 'to exercise broad discretion ... within a statutory range' " (quoting *Booker,* 543 U.S. at 233, 125 S.Ct. 738)). In my opinion, *Cunningham* cannot properly be deemed to prohibit all judicial fact-finding for sentencing enhancements.

{50} Therefore, judges are permitted to exercise broad discretion within a statutory range of sentences authorized by the jury's verdict. For example, in *Booker* the Court held, "[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker,* 543 U.S. at 233, 125 S.Ct. 738. Under *Booker,* a sentencing judge is free to impose an enhanced sentence within a statutory range based on any aggravating circumstances, even if those circumstances were not found by the jury.

{51} If the sentencing judge is authorized to enhance the sentence without finding additional facts, then judicial fact-finding is permissible. Decided after *Cunningham, Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), is the next case in the line of United States Supreme Court decisions interpreting the Sixth Amendment. In *Rita,* the United States Supreme Court discussed its Sixth Amendment holdings and stated, "This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Id.* at 2465–66. To that end, the Court held, "The Sixth Amendment question ... is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." *Id.* at 2466. Accordingly, if the judge's authority to enhance the sentence comes from facts found by the jury, then a judge is permitted to find facts to determine whether to actually enhance the defendant's sentence and to what degree.

{52} The majority correctly finds that a statute violates the Sixth Amendment when a judge has "no discretion to select a sentence within a range" and where a judge must find a basic or medium sentence "unless he found facts allowing the imposition of a [greater] sentence." *Cunningham,* 127 S.Ct. at 870. But, to reach the conclusion that Section 31–18–15.1 is "facially unconstitutional," the majority interprets *Cunningham* broadly to

hold that "*any* sentence above the basic sentence contained in our sentencing statutes as written violates the Sixth Amendment because, based solely on the jury verdict (or plea agreement admitting only to the elements of the crime), a judge may not alter the basic sentence upwards without affirmatively establishing facts." Therefore, the majority holds that it is "undeniable" that Section 31–18–15.1 "*forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)" (quoting *Rita*, 127 S.Ct. at 2466).

{53} In light of *Apprendi* and its progeny, a plain reading of Section 31–18–15.1 presents some ambiguity:

> The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31–18–15 NMSA 1978 upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case.

Section 31–18–15.1(A). Section 31–18–15.1's plain language does not invoke the Supreme Court's bar of judicial fact-finding because there is no language explicitly showing that judicial fact-finding is the sole basis for the sentence enhancement.

{54} In *Lopez* we recognized ambiguity in the statute given the Supreme Court's Sixth Amendment rulings:

> Section 31–18–15.1 refers to "circumstances" rather than "facts," and imposes very few restrictions on what circumstances may be considered. The statute requires a writing stating "reasons" rather than findings of fact. The purpose of the writing requirement is to ensure that the trial court did not consider impermissible circumstances, such as a defendant's exercise of the right to silence.

*Lopez*, 2005–NMSC–036, ¶ 40, 138 N.M. 521, 123 P.3d 754 (citation omitted). The plain language of Section 31–18–15.1 leaves open an interpretation of Section 31–18–15.1 as a range of permissible sentences, which would pass constitutional muster.

{55} *Lopez* resolved the ambiguity in Section 31–18–15.1 and interpreted the statute as a range of permissible sentences, within which the sentencing judge has broad discretion. The defendant in *Lopez* argued that the trial court exceeded its authority in aggravating the defendant's sentence for conspiracy to commit murder by one-third. *Lopez*, 2005–NMSC–036, ¶ 2, 138 N.M. 521, 123 P.3d 754. The defendant argued that under the Sixth Amendment "the maximum sentence a judge may impose is the maximum he may impose *without* any additional findings." *Id.* (internal quotation marks omitted). Defendant argued that "the 'aggravating circumstances surrounding the offense or concerning the offender' to which Section 31–18–15.1 refers are 'additional findings' under *Blakely* and that a jury rather than a judge must determine whether the State has proved the necessary facts to support these findings beyond a reasonable doubt." *Id.* In *Lopez*, we faced the same issue that we now face in *Frawley*: whether Section 31–18–15.1 violated defendant's right to trial by jury when the judge aggravated the defendant's sentence by one-third.

{56} This issue has been resolved. In *Lopez*, this Court recognized that "in every criminal case, without exception, the sentencing judge must hold a hearing to determine whether to decrease the defendant's sentence below the midpoint, or increase it above it, showing there was no right to the basic sentence." *Lopez*, 2005–NMSC–036, ¶ 35, 138 N.M. 521, 123 P.3d 754. Moreover, we found that the legislative history of NMSA 1978, Section 31–18–15 (1999) and Section 31–18–15.1 " 'strongly evinces a legislative intent that the two provisions be read together to prescribe a range of permissible sentences.' " *Lopez*, 2005–NMSC–036, ¶ 41, 138 N.M. 521, 123 P.3d 754 (affirming the statutory analysis in *Wilson*, 2001–NMCA–032, ¶ 17, 130 N.M. 319, 24 P.3d 351). As a result, this Court held, "The outer limits of sentencing, without additional specific fact-finding, is the basic sentence plus a one-third

increase under Section 31–18–15.1." *Id.* ¶ 35 (citation and internal quotation marks omitted).

{57} This construction does not violate Defendant's right to jury trial. Defendant was convicted of two felonies, each carrying a basic sentence of three years' imprisonment. *State v. Frawley,* 2005–NMCA–017, ¶ 2, 137 N.M. 18, 106 P.3d 580. The trial judge increased the sentence for each felony by one year for aggravating circumstances, pursuant to Section 31–18–15.1(A). Those aggravating circumstances were Defendant's lack of remorse, the short interval between these felonies and a prior similar offense, the pain and fear endured by the victims and their families, and Defendant's flight to avoid prosecution. *Id.* As in *Lopez,* Defendant is arguing that by increasing the sentence based on these aggravating circumstances, the judge violated Defendant's Sixth Amendment rights. Because we held in *Lopez* that the Legislature created ranges of permissible sentences, of which the basic sentence is the midpoint, and that a convicted criminal has no right to a sentence at the midpoint, it follows that a judicial finding under Section 31–18–15.1 does not increase the sentence beyond the statutory maximum. *Lopez,* 2005–NMSC–036, ¶ 45, 138 N.M. 521, 123 P.3d 754.

{58} I disagree with the majority that Section 31–18–15.1 is unconstitutional in all circumstances. When the jury finds at least one fact permitting the judge to impose the upper term of the basic sentence plus one-third, Section 31–18–15.1 becomes a range in which the relevant statutory maximum for Sixth Amendment purposes is that upper term (basic sentence plus one-third). On remand from the United States Supreme Court after *Cunningham,* the California Supreme Court held,

> [A]s long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial.

*People v. Black* (*Black II* ), 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130, 1138 (2007). The court in *Black II* recognized that the Sixth Amendment decisions beginning with *Apprendi* and leading to *Cunningham* require juries to find, beyond a reasonable doubt, only those facts that expose a defendant to a greater potential sentence. *Id.* Therefore, when the upper term is available by virtue of the jury's findings, the United States Constitution permits the sentencing judge to rely on any aggravating circumstances to select the appropriate term within the range, from the basic sentence to the basic sentence plus one-third. In this situation, aggravating circumstances may be judicially found and may come from any source. *See id.* Under our sentencing statutes, a jury's verdict authorizes punishment within the range prescribed by Section 31–18–15.1, in which a judge may determine the appropriate sentence.

{59} Judicial fact-finding within the authorized range does not implicate the Sixth Amendment. Applied in this manner, Section 31–18–15.1 is consistent with a plain reading of the statute in conjunction with Section 31–18–15. Furthermore, under *Cunningham* and its predecessors, this is a permissible application of our sentencing scheme. In my opinion, this reading of Section 31–18–15.1 is consistent with *Lopez,* and it satisfies the presumption of constitutionality without committing "judicial surgery," with which the majority is concerned.

{60} Even if Section 31–18–15.1 is construed as constitutional, the majority is concerned that it will still be unconstitutional in effect. *Apprendi* stated, "[T]he relevant inquiry is one not of form, but of effect[.]" 530 U.S. at 494, 120 S.Ct. 2348. The majority reasons that Section 31–18–15.1 cannot be interpreted constitutionally because "when determining if aggravating circumstances exist, a judge would *still* be finding facts." However, as discussed above, judicial fact-finding is permitted in the appropriate circumstances.

{61} I disagree with the majority that this statute is fundamentally unconstitutional in either form or effect. For the reasons stated above, I respectfully dissent. As a matter of

application, however, I agree with the majority that its ruling should apply prospectively, not retroactively.