CHÁVEZ, Justice, dissenting. {62} The Framers of the Bill of Rights would be alarmed to learn that a child can be condemned to an adult prison for up to a life sentence without at least the same constitutional protections afforded adults. In New Mexico a child who is “subject to the provisions of the Delinquency Act is entitled to the same basic rights as an adult.” NMSA 1978, § 32A-2-14(A) (1993) (amended 2009). These rights include a jury trial if the offenses alleged would be triable by jury if committed by an adult. State v. Erie M., 1996-NMSC-056, ¶¶ 5-7, 122 N.M. 436, 925 P.2d 1198; Rule 10-245(A) NMRA. It is unconstitutional to increase an adult’s sentence based on additional findings relating to the offense or the offender unless a jury finds such facts beyond a reasonable doubt. State v. Frawley, 2007-NMSC-057, ¶ 23, 143 N.M. 7, 172 P.3d 144. The majority concludes that it is constitutional to increase a child’s sentence by decades and imprison the child in an adult prison, based on additional findings relating to the offense and the child, even though a judge and not a jury makes those findings and even though the judge finds such facts by something less than a reasonable doubt. Because I believe the time has come for us to unequivocally hold that a youthful offender is entitled to the same constitutional protections as an adult, I respectfully dissent. {63} In this ease, the child was condemned to an adult prison for twenty-five years based on a judge’s finding, not beyond a reasonable doubt but by clear and convincing evidence, that the child was not amenable to treatment in an available treatment facility. Without this finding, the judge could only commit the child to the Children, Youth & Families Department until he reached age twenty-one, NMSA 1978, § 32A-2-19(B)(l)(d) (1993) (amended 2009); see also NMSA 1978, § 32A-2-20(B) (1993) (amended 2009), which for this child would have been three and one-half years. Thus, the severe consequence to the child was being confined in an adult prison approximately twenty-two years longer than what his factual concessions alone authorized. {64} In America an adult cannot be imprisoned unless a jury finds, beyond a reasonable doubt, all of the facts that support imposition of the penalty. Duncan v. Louisiana, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). If the legislative branch defines a maximum sentence for a discrete crime, but also authorizes a judge to increase the maximum sentence for that discrete crime based on additional findings, the defendant has a Fifth and Sixth Amendment right to have a jury find the additional facts beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This is because at the time the Bill of Rights was framed, the jury traditionally found all facts that the law made essential for the punishment. Blakely v. Washington, 542 U.S. 296, 309, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). {65} The United States Supreme Court has clearly defined the statutory maximum sentence for purposes of its analysis. [T]he relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,” and the judge exceeds his proper authority. Id. at 303-04, 124 S.Ct. 2531 (citation omitted). When the judge, and not a jury, finds additional facts “related to the offense or the offender-beyond the elements of the charged offense” as a prerequisite to exercising discretion to increase a sentence beyond the statutory maximum, such a scheme is unconstitutional. Cunningham v. California, 549 U.S. 270, 279, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). Of course, the defendant may knowingly and voluntarily waive the jury determination or may admit the essential facts for the additional findings. {66} In New Mexico, the basic sentence for an adult convicted of a non-capital first degree felony is eighteen years in prison, plus a period of parole and/or imposition of a fine not to exceed $15,000. NMSA 1978, § 31-18-15(A)(3), (C), & (E)(3) (1993) (amended 2007). Effective July 1, 2009, a judge may increase the sentence by up to one-third if a jury finds “beyond a reasonable doubt ... any aggravating circumstances surrounding the offense or concerning the offender.” NMSA 1978, § 31-18-15.1(A)(2) & (G) (1979) (amended 2009). Prior to its amendment in 2009, Section 31-18-15.1 authorized the judge to increase a defendant’s basic sentence by up to one-third if the judge found aggravating circumstances surrounding the offense or concerning the offender. We held that such a scheme was unconstitutional because the Sixth Amendment gave the defendant the right to have a jury make such findings beyond a reasonable doubt. Frawley, 2007-NMSC-057, ¶ 23, 143 N.M. 7, 172 P.3d 144. The simple and straightforward constitutional requirement is that “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 530 U.S. at 489, 120 S.Ct. 2348. It is, however, perfectly constitutional for a judge to “exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute.” Id. at 481, 120 S.Ct. 2348. {67} The majority acknowledge the Apprendi bright-line rule, but then mistakenly depart from it, citing to Oregon v. Ice, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). Majority op. ¶¶ 20-24. In my opinion, it is a mistake to depart from the bright-line rule because Ice supports the opposite conclusion reached by the majority for at least three reasons. First, as for adults, the historical practice at common law was for a jury to find all facts that the law made essential for the punishment of a child between the ages of fourteen and eighteen. Second, if we are to honor our state sovereignty, we should not easily discard this State’s insistence that a youthful offender has a constitutional right to a jury trial. The approach taken by the majority will mark the first time this Court has lessened the protections of a constitutional right on the altar of state sovereignty. Third, in this case the child was sentenced for a discrete offense not for “multiple offenses different in character or committed at different times.” Ice, 555 U.S. at -, 129 S.Ct. at 717. AT COMMON LAW, A JURY DECIDED ALL FACTS THAT AUTHORIZED IMPOSITION OF AN ADULT SENTENCE ON A CHILD {68} The majority rely on the “twin considerations ... historical practice and respect for state sovereignty” in declining to extend Apprendi to amenability evidentiary findings. Majority op. ¶ 39 (internal quotation marks and citation omitted). However, the majority has not accurately analyzed historical practice. The Ice majority cautiously explained that its historical inquiry is intended to honor common law practices by focusing on “whether the finding of a particular fact was understood as within ‘the domain of the jury ... by those who framed the Bill of Rights.’ ” 555 U.S. at -, 129 S.Ct. at 717 (quoting Harris v. United States, 536 U.S. 545, 557, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion)). The question is whether the jury function at issue extended down through the centuries into the common law. Id. In this case, the proper question is did the jury historically under common law find all facts essential for imposing an adult sentence on a child? The majority ignores over 125 years of historical common law practice whereby a jury traditionally decided the facts that authorized a child between the ages of fourteen and eighteen to be punished as an adult. Majority op. ¶ 48. Instead, the majority seeks to commence the historical practice in 1917 with the inception of separate juvenile proceedings. Majority op. ¶ 47. {69} Separate juvenile proceedings did not exist at common law, so it was impossible for the Framers of the Bill of Rights to understand that a judge and not a jury would make findings that authorized the imprisonment of a child in an adult prison. All the Framers could have known was that a fourteen- to eighteen-year-old child who was accused of a crime was (1) treated the same as an adult, and (2) enjoyed the same constitutional protections as an adult. The Ice Court’s focus was on consecutive sentencing of a defendant for multiple convictions. The Ice majority pointed to the historical common law practice of a judge deciding whether to impose consecutive sentences. 555 U.S. at -, 129 S.Ct. at 718. On this basis alone, Ice is distinguishable from this case. The majority cannot point to a common law practice in which the judge made the essential findings, by clear and convincing evidence, that would authorize the judge to sentence the child as an adult. This role was the traditional jury function. {70} I readily concede that the Legislature sought to temper the harsh effects of punishing a fourteen-year-old the same as an adult when our Legislature enacted a juvenile justice system. This noble effort to emphasize rehabilitation, however, must still pass constitutional scrutiny. We must evaluate the legislation as it is currently written to determine whether it is constitutional.[4] Under the Delinquency Act as it is applied to a youthful offender, the State has exercised its discretion to seek adult punishment for the accused child. The State’s focus is no longer on rehabilitation. Its focus is now on punishment of the child to the same degree the State would want to punish an adult for the same crime. {71} However, proof only of the essential elements of the charged crime is insufficient to impose an adult sentence on a child. To deprive a child of the right to have a jury determine all of the facts essential to punishing him or her as an adult is both fundamentally unfair and unconstitutional. The Legislature “may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt.” Harris, 536 U.S. at 557, 122 S.Ct. 2406. {72} The Court of Appeals correctly concluded that “the juvenile sentence is the baseline sentence because the adult sentence is available only if the court makes the required [additional] factual findings.” State v. Rudy B., 2009-NMCA-l04, ¶ 43, 147 N.M. 45, 216 P.3d 810. Apprendi and its progeny, including Ice, teach that if a defendant is being sentenced for a discrete offense, a jury must make all of the necessary findings unless the defendant waives the jury trial or admits the essential facts. In this case it was not the child’s admission that he eommitted the offenses which authorized the judge to sentence him to an adult sentence in an adult prison. All that the judge was authorized to do with the child’s admission is commit the child to the Children, Youth & Families Department until he reached age twenty-one. It was only after additional evidence was presented and the judge made additional findings relating to the offense and to the child that the judge could impose an adult sentence that was decades longer than the juvenile sentence. THE SENTENCE RUDY B. RECEIVED WAS OFFENSE SPECIFIC {73} The majority asserts that the findings by the judge were not offense specific and are predictive, which set them apart from the findings considered in Apprendi. Majority op. ¶¶36, 39. Labeling the findings as predictive is not helpful to the analysis. If a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt. A defendant may not be “exposefd] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.” Ring v. Arizona, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (citation omitted) (quoting Apprendi, 530 U.S. at 483, 120 S.Ct. 2348). The focus is not on form but on effect. Id. {74} Under New Mexico’s juvenile justice system, a judge must first make additional findings relating to both the offense and the child before the judge is authorized to sentence the child as an adult. Section 32A-2-20(C)(l)-(4) requires the judge to consider matters related to the offense.[5] The remaining factors focus on the child. In Cunningham, the United States Supreme Court rejected as unconstitutional a system where a sentence was increased based on facts relating to the crime, the accused, or other facts considered to be circumstances in aggravation. 549 U.S. at 278-79,127 S.Ct. 856. The New Mexico Supreme Court also found unconstitutional a statutory scheme that allowed a judge to increase a statutory maximum sentence by making additional findings concerning the offense and the offender. Frawley, 2007-NMSC-057, ¶ 23, 143 N.M. 7, 172 P.3d 144. {75} The essential inquiry is whether the findings involve a sentence for a discrete offense. Ice, 555 U.S. at -, 129 S.Ct. at 717. It cannot be disputed that the adult sentence received by the child after the sentencing judge made additional findings is related to a discrete crime. He was sentenced as an adult for the specific crimes that he admitted he had committed. The sentencing judge relied on the sentencing statutes that pertained to those crimes. The child admitted that he committed two second-degree felonies and two third-degree felonies with a firearm enhancement. Section 31-18-15 authorized a judge to sentence an adult to twenty-five years total for the same crimes. However, the judge was not entitled to consider the adult sentencing statutes until the judge made additional findings about both the offense and the child. {76} As we recently noted in State v. Jones, The finding of non-amenability is the trigger for the court’s authority to sentence a youthful offender as an adult. See [State v.] Muniz, 2003-NMSC-021, ¶ 16, 134 N.M. 152, 74 P.3d 86. The finding gives the court the discretion to impose the “adult consequences of criminal behavior” on a child who would be otherwise exempt from adult punishment. [NMSA 1978,] Section 32A-2-2(A) [ (1993) (amended 2007)]. Put another way, the finding of non-amenability gives the court the necessary leverage to dislodge a youthful offender from the protective dispositional scheme of the Delinquency Act. 2010-NMSC-012, ¶ 38, 148 N.M. 1, 229 P.3d 474. {77} In Jones, this Court was convinced that the Legislature intended to protect children from the adult consequences of criminal behavior. It is not congruent to state that New Mexico seeks to protect children from adult consequences of criminal behavior, and yet deprive children of the same constitutional protections enjoyed by adults accused of committing similar crimes. {78} Once we accept that a youthful offender has a right to a jury trial, the youthful offender should benefit from the traditional functions of the jury to the same extent as an adult. In Rudy B., Judge Sutin raised a concern in his special concurrence about the United States Supreme Court plurality opinion in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion). 2009-NMCA-104, ¶ 64, 147 N.M. 45, 216 P.3d 810 (Sutin, J., specially concurring). The McKeiver Court held that a juvenile in a delinquency proceeding is not entitled to a jury trial. In my opinion, the McKeiver Court would have found a right to a jury trial for a youthful offender in New Mexico. The key rationale for the plurality deciding that children are not entitled to jury trials is because no juvenile under either Pennsylvania or North Carolina law could be confined beyond his or her twenty-first birthday, which suggested to the plurality that the juvenile justice system was rehabilitative and did not necessarily involve criminal prosecution. 403 U.S. at 541, 91 S.Ct. 1976. The plurality was concerned that requiring a jury trial in delinquency proceedings would “put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding.” Id. at 545, 91 S.Ct. 1976. I doubt the plurality would find a system where a child can be imprisoned for life in an adult prison to be an “intimate, informal protective proceeding.”[6] We ourselves recognize that a child charged as a youthful offender is really being tried as an adult and not as a child. For this reason, a grand jury indictment or bind-over order is required and the Rules of Criminal Procedure for the District Court apply. See Rule 10-101(A)(2)(b) NMRA. We should not pretend that a child charged as a youthful offender is exclusively in a juvenile rehabilitation system when the State has announced its intention to treat the child as an adult and seek imprisonment in an adult prison. This is particularly true given the inadequate funding of our juvenile justice system and the scarcity of treatment facilities. {79} Indeed, as I read the record, this child was sent to an adult prison, not because he was not amenable to treatment, but because of the unavailability of facilities. While the court evaluator thought that Rudy B. was only adapting to his environment, those who worked with the child while he was in the juvenile detention facility believed he was amenable to treatment. The licensed psychologist who worked with the child was of the opinion that he was amenable to rehabilitation and pointed to his voluntary attendance in group therapy that focused on issues that make violent acting-out more likely. In fact, although the child had reached the age of majority, instead of remanding him to an adult jail, an exception was made to keep him in the juvenile facility. {80} The testimony during the hearing was more of a testament to the lack of available resources than about a child who was not amenable to treatment. It was also mentioned that because Rudy B. was not indigent, he did not qualify for some programs, and the managed care organization (Value Options at the time) would not approve his admission into one of its programs because he did not have a history of other hospitalizations or “treatment episodes.” {81} As it pertains to youthful offenders, it seems that the tail is wagging the dog. Simply stated, a youthful offender in New Mexico’s current juvenile justice system is treated the way an accused child of the same age was treated at common law. A fourteen- to eighteen-year-old child at common law was entitled to the same constitutional protections as an adult. A youthful offender in New Mexico also should be entitled to the same constitutional protections enjoyed by adults in this state. No matter how much we gloss over it, an amenability hearing is nothing more than a hearing on aggravating circumstances relating to either the offense or the offender. {82} It is unconstitutional when only a judge, and not a jury, makes the findings necessary to increase an adult’s sentence beyond the statutory maximum. In New Mexico, a child faces an even more drastic increase in his or her sentence than an adult faces under the aggravating circumstances scheme contained in Section 31-18-15.1, which we declared unconstitutional. We should not tolerate this disparity in treatment. When the words “no person” appear in the Fifth Amendment of the United States Constitution and the words “the accused” appear in the Sixth Amendment, we should not interpret them to mean “no adult person” or “the adult accused.” Similarly, when Article II, Section 12 of the New Mexico Constitution confers the right of trial by jury “to all” and Article II, Section 18 states that “no person” shall be deprived of liberty without due process of law, we should not interpret them to mean “to all adults ” or “no adult person.” {83} Ironically, if the Legislature wrote a law to mirror reality, it would be constitutional. By this statement, I mean that the Legislature could have written a law that authorized a judge to sentence a child as an adult based solely on the facts relating to the charged offense as found by a jury beyond a reasonable doubt. The judge could then consider the child’s amenability to treatment in available facilities to mitigate the adult sentence. Because commitment to a treatment facility would be within the range authorized by law, the judge, not a jury, could find the mitigating facts, but that is not how the legislation is written. The legislation quite clearly requires additional findings before the judge can impose an adult sentence on a child. Because the additional findings must be made by a jury beyond a reasonable doubt, the next question is whether the legislation is unconstitutional on its face or as it is applied. {84} In my opinion, the legislation is unconstitutional as it is applied, since nothing in the Delinquency Act precludes a judge from empaneling a jury during an amenability hearing. Section 32A-2-20(B) requires “the court” to make the additional findings. This language is different than the language in Section 31-18-15.1, which we declared to be unconstitutional. In Section 31-18-15.1, the Legislature specifically required the judge to make the findings of aggravating circumstances. Frawley, 2007-NMSC-057, ¶¶ 27, 31, 143 N.M. 7, 172 P.3d 144. If we abide by the statutory construction principle that instructs us to attempt to construe a statute to be constitutional, State v. Flores, 2004-NMSC-021, ¶ 16, 135 N.M. 759, 93 P.3d 1264, there is precedent for defining “court” to include both the judge and the jury. Black’s Law Dictionary 352 (6th ed. 1990) (“A body organized to administer justice, and including both judge and jury.”). “Court” does not have to be construed to only include a judge, when doing so would render a statute unconstitutional. See State v. Bean, 2002 WL 31059235 (N.H.Super.2002) (unpublished order). Section 32A-2-20(C) refers to having a judge consider certain factors, but it does not preclude a judge from considering such factors as found by a jury beyond a reasonable doubt. {85} Permitting a jury to make these findings does not create any problems and it is consistent with the jury’s traditional role to act as the finder of fact, the community conscience, and as a bulwark between the State and the accused, protecting ordinary people from government overreaching. One of common law’s longstanding tenets is that the ‘“truth of every accusation’ against a defendant ‘should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours.’ ” Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)). {86} In this case, the sentencing judge heard testimony from both lay people and experts before making the findings that authorized her to sentence the child to an adult sentence in an adult prison. Every day in our courtrooms, jurors from a variety of educational and socioeconomic backgrounds are called upon to weigh similar evidence from a variety of experts. Significantly, jurors are also authorized to consider both mitigating circumstances regarding the offense and the defendant in capital punishment proceedings when deciding whether the defendant should be sentenced to death, including whether the defendant “is likely to be rehabilitated.” UJI 14-7029 NMRA.[7] Although we may have faith in our trial court judges, our faith is irrelevant. The child and his or her attorney may believe that twelve adult citizens in a jury box will be more reliable and less idiosyncratic fact finders than a single judge. The child, with advice of counsel, can decide when and under what circumstances to waive a jury trial. We should not preempt that important decision by initially denying the child the full protection of our jury system. {87} Most of the Bill of Rights is procedural. Procedure distinguishes the rule of law from rule by whim. Steadfast adherence to procedure provides the greatest assurance that there will be equal justice under law. To deprive a child of the same jury protections afforded an adult is not equal justice. {88} For the foregoing reasons, I respectfully dissent. . As noted by the majority in this case, the juvenile justice system has evolved with different goals at different times. At times the legislation emphasized rehabilitation, and at other times the legislation was more concerned with retribution. . In this case, at the time the child entered his plea, he necessarily admitted the essential facts under Section 32A-2-20(C)(2)-(4). Shooting at or from a motor vehicle with great bodily harm requires willful discharge of a firearm that injures a person. NMSA 1978, § 30-3-8(B) (1987) (amended 1993). However, not all crimes that might result in a child being charged as a youthful offender have all of the elements of Section 32A-2-20(C)(2)-(4), such as robbery. . Recently in Graham v. Florida, — U.S. -, -, 130 S.Ct. 2011, 2031, 176 L.Ed.2d 825 (2010), the United States Supreme Court expressed its disapproval of a juvenile justice system that allows the imposition of a life without parole sentence on a child based on a subjective judgment by a judge or a jury that the child is irredeemably depraved. . Jurors are also entrusted in civil litigation with finding facts regarding future damages such as loss of earning capacity, future pain and suffering, and such other "predictive findings.”