FILED
United States Court of Appeals
Tenth Circuit

June 2, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAMIAN L. BROOKS,

      Defendant-Appellant.

No. 13-3166

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:11-CR-20136-KHV-1)**

---

Melody Evans, Interim Federal Public Defender, Topeka, KS, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, KS, for Plaintiff-Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

      Did Defendant Damian L. Brooks commit enough prior qualifying felonies to be considered a "career offender" under the Federal Sentencing Guidelines? The district court below said yes, relying on United States v. Hill, 539 F.3d 1213 (10th Cir. 2008), to classify a prior Kansas conviction of Defendant as a felony because

it was punishable by more than one year in prison.  On appeal, Defendant admits <u>Hill</u> mandates this classification.  He argues, however, that <u>Hill</u> was abrogated by the Supreme Court in <u>Carachuri-Rosendo v. Holder</u>, 560 U.S. 563 (2010).  We agree.  As such, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reverse and remand for resentencing.

**I.**

**A. Kansas Sentencing Guidelines**

Kansas's rather unusual criminal sentencing scheme lies at the heart of the current dispute.  While we now abandon <u>Hill</u>'s holding, we do not quibble with <u>Hill</u>'s description of Kansas's sentencing parameters.  In general, Kansas criminal statutes do *not* contain explicit maximum penalties (*e.g.* "Burglary is punishable by no more than ten years . . . .").  <u>See, e.g.</u>, Kan. Stat. Ann. § 21-6201 (2010).  Instead,

> [t]he determination of a felony sentence [in Kansas] is based on two factors: the current crime of conviction and the offender's prior criminal history.  The Kansas sentencing guidelines employ a grid, which is a two-dimensional chart.[1]  The grid's vertical axis lists the various levels of crime severity, ranging from I to IX for non-drug offenses.  The horizontal axis is the criminal history scale, which classifies various criminal histories.  To determine an offender's presumptive sentence, one must consult the grid box at the juncture of the severity level of the crime for which the defendant was convicted and the offender's criminal history category. . . .
>
> On June 6, 2002, Kansas adopted new sentencing provisions . . . eradicat[ing] the trial court's discretion to sentence a defendant to an

---

[1] The chart for non-drug offenses is attached to this opinion.  <u>See</u> Appendix; <u>cf.</u> Kan. Stat. Ann. § 21-6804 (2013) (statutory basis for the chart).

2

upward departure [from the presumptive sentence] based on aggravating factors. Instead, upward departures are permitted where by unanimous vote, the jury finds beyond a reasonable doubt that one or more specific factors exist that may serve to enhance the maximum sentence. The state must seek an upward departure sentence not less than thirty days prior to trial. The court must then determine if any facts or factors that would increase the sentence beyond the statutory maximum need to be presented to the jury and proved beyond a reasonable doubt. As a consequence, upward departures are . . . constitutional in Kansas, but they require new procedures and a jury finding.

Hill, 539 F.3d at 1215–16 (internal quotation marks, citations, and footnote omitted).

## B. Federal Sentencing Guidelines

Under § 4B1.1(a) of the U.S. Sentencing Guidelines Manual (U.S.S.G.), a defendant is considered a "career offender" if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The U.S.S.G. commentary later defines "[p]rior felony conviction" as "a prior adult federal or state conviction for an *offense punishable by . . . imprisonment for a term exceeding one year,* regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 cmt. app. n.1 (emphasis added).

## C. Precedent

In 2005 we decided United States v. Plakio, 433 F.3d 692 (10th Cir. 2005), which required us to determine whether a defendant's prior Kansas drug conviction qualified under U.S.S.G. § 2K2.1(a)(4)(A) as a "felony"; that is, whether the offense was "punishable by . . . imprisonment for a term exceeding one year." Plakio, 433

3

F.3d at 693–94 (quoting U.S.S.G. § 2K2.1 cmt. app. n.1). Under Kansas's sentencing scheme, the defendant could have received eleven months in prison at most. Id. at 695. Reversing the district court, we held this conviction was not a felony "[b]ecause the [state] sentencing court could not have imposed a sentence greater than one year." Id. "Central to the Plakio decision was the premise that the maximum sentence must be calculated by focusing on the particular defendant," taking his criminal history category (under Kansas law) into account. Hill, 539 F.3d at 1217 (citing Plakio, 433 F.3d at 697).

Three years later, the Supreme Court issued United States v. Rodriquez, 553 U.S. 377 (2008). Soon after, we decided Hill, 539 F.3d 1213. Much like Plakio, Hill required us to determine whether a defendant's prior Kansas firearm conviction qualified as a "crime punishable by imprisonment for a term exceeding one year"—this time under 18 U.S.C. § 922(g)(1). Hill, 539 F.3d at 1214. Also like Plakio, under Kansas's sentencing scheme the defendant could have received no more than eleven months in prison. Id. Initially, under our Plakio approach, we held the defendant was not convicted of a "crime punishable by imprisonment for a term exceeding one year." Id. at 1213–14, 1218. After Rodriquez was released, however, we granted panel rehearing and vacated our prior opinion. Id. Rodriquez, we held, "explicitly rejected the proposition that mandatory guidelines systems that cap sentences [like Kansas's system] can decrease the maximum term of imprisonment." Id. at 1218 (quoting Rodriquez, 553 U.S. at 390) (internal quotation marks omitted).

4

Relying on Rodriquez, we overturned Plakio and held the proper focus in regard to the language in question is on the crime itself, not the individual defendant. Id. at 1221. "A defendant convicted of a severity level VIII crime with a more extensive criminal history does not commit a different *crime*," we emphasized. "Instead, he is simply exposed to a greater sentence under the guidelines." Id. at 1219. Thus, we held that when analyzing whether a defendant's prior crime was punishable by a certain amount of prison time under Kansas's scheme, the largest possible recividist enhancement must be taken into account. Id. at 1221. And, because the severity level of Hill's crime cross-referenced with the worst criminal history possible carried a maximum penalty of twenty-three months in jail, we concluded he was convicted of "a crime punishable by imprisonment for a term exceeding one year." Id. (quoting 18 U.S.C. § 922(g)(1)).

In 2010, the Supreme Court issued Carachuri-Rosendo, 560 U.S. 563. There the defendant was a lawful permanent resident being removed from the United States because of two prior Texas drug misdemeanor convictions—one in 2004 and one in 2005. Id. at 566, 570–71. For the 2005 crime, which involved possession of a single Xanax tablet sans prescription, the defendant was sentenced to just ten days in jail. Id. In Texas, however, he could have been subject to a major sentencing enhancement because of the 2004 conviction—an enhancement that would have exposed him to more than one year in prison—but only if the prosecution proved the prior conviction. Id. at 570–71. The State did not elect to offer such proof. Id. at

5

571. Regardless, the Federal Government in <u>Carachuri-Rosendo</u> contended the defendant was not eligible for cancellation of removal or waiver because the 2005 offense qualified as an "aggravated felony" under the Immigration and Nationality Act (INA), a determination that ultimately hinged on whether the crime allowed for a "maximum term of imprisonment" of "more than one year." <u>Id.</u> at 566–67 (quoting 8 U.S.C. § 1229b(a)(3) and 18 U.S.C. § 3559(a)). The Government theorized that, "had Carachuri-Rosendo been prosecuted in federal court instead of state court [for the 2005 offense], he *could have been* prosecuted as a felon and received a 2-year sentence based on the . . . [2004] offense." <u>Id.</u> at 570 (emphasis in original).

In its decision, the Supreme Court first expressed wariness of the Government's argument because "the English language tells us that most aggravated felonies are punishable by sentences far longer than 10 days . . . ." <u>Id.</u> at 575. The Supreme Court then rejected the Government's "hypothetical approach" because it: (1) ignored the INA's text, which "indicates that we are to look at the conviction itself . . . not to what might or could have been charged"; (2) would punish a defendant for recidivism without providing him notice or opportunity to contest said recidivism and would "denigrate the independent judgment of state prosecutors" who chose not to prove recidivism; (3) depends on a misreading of <u>Lopez v. Gonzales</u>, 549 U.S. 47 (2006), which did not go so far as to permit the reliance on a "hypothetical to a hypothetical"; (4) was inconsistent with common federal court practice, whereby the defendant "would *not*, in actuality, have faced any felony

6

charge"; and (5) failed to construe an ambiguity in an immigration-related criminal statute in the noncitizen's favor. Id. at 575–81. In conclusion, the Supreme Court stated: "The prosecutor in Carachuri-Rosendo's [Texas] case declined to charge him as a recidivist. He has, therefore, not been convicted of a felony punishable [by more than one year in prison] under the Controlled Substances Act." Id. at 582.

Significantly, the Supreme Court also dismissed the argument that Rodriquez supported the Government. Rodriquez, the Court clarified, "held that a recidivist finding could set the 'maximum term of imprisonment,' but only when the finding is a part of the record of conviction." Id. at 577 n.12. Indeed, the Court noted,

> we specifically observed [in Rodriquez] that "in those cases in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense." In other words, [pursuant to Rodriquez,] when the recidivist finding giving rise to a 10-year sentence is not apparent from the sentence itself, or appears neither as part of the "judgment of conviction" nor the "formal charging document," the Government will not have established that the defendant had a prior conviction for which the maximum term of imprisonment was 10 years or more (assuming the recidivist finding is a necessary precursor to such a sentence).

Id. (internal citations omitted).

**D. Facts**

In December 2009, a Kansas state court convicted Defendant of possessing cocaine with intent to sell and sentenced him to 40 months in jail. Around the same time, Defendant was convicted in a Kansas state court of eluding a police officer.

7

For this latter crime, Defendant's presumptive Kansas guideline range allowed for a maximum of seven months of jail time. The prosecutor did not seek an upward departure, meaning the state court could not have sentenced Defendant to more than seven months imprisonment. In the end, the court imposed a six month sentence.

On May 8, 2012, Defendant pled guilty in the federal District of Kansas to possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and to using and carrying a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Prior to sentencing, the United States Probation Office concluded in its Presentence Report (PSR) that Defendant was a "career offender" under U.S.S.G. § 4B1.1(a) because, among other requirements not at issue here, he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." Namely, the PSR counted Defendant's prior cocaine distribution conviction as a felony controlled substance offense and his prior eluding conviction as a felony crime of violence. This career offender categorization added two points to Defendant's offense level, giving him a total offense level of 31. This, combined with his criminal history category, produced a guideline range of 262 to 327 months in prison.

Defendant objected to his career offender classification, arguing that eluding a police officer, while indeed a crime of violence, was not a federal *felony* in this instance because it was not "punishable by . . . imprisonment for a term exceeding one year." For support, Defendant relied on Carachuri-Rosendo, which he argued

had implicitly invalidated Hill and Hill's reliance on the "hypothetical worst recidivist" to determine the length of imprisonment for which a crime was punishable. Because the Kansas prosecution never sought an upward departure in regard to Defendant's conviction for eluding a police officer, the crime only subjected him to a maximum of seven months in prison. Thus, Defendant asserted, it was *not* a felony under the federal sentencing strictures. In response, the Government stood by Hill; eluding a police officer was punishable by over one year in prison because a defendant with the worst criminal history possible could have received up to 17 months in jail for committing the crime. Both parties agreed this issue should not be covered by the waiver of appeal in Defendant's plea agreement, and the district court acknowledged the parties' unity on this point.

Eventually, after a hearing, the district court overruled Defendant's objection in a written order. The court acknowledged two circuits had "held that in light of Carachuri-Rosendo, hypothetical aggravating factors cannot be considered when determining a defendant's maximum punishment for a prior offense." See United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc); United States v. Haltiwanger, 637 F.3d 881 (8th Cir. 2011). The court, however, denied having the authority to ignore Hill because the case was not "clearly irreconcilable" on its face with Carachuri-Rosendo. For support on this point, the court noted that six circuit judges dissented in Simmons and Haltiwanger combined.

At sentencing, the district court departed downward based on the plea

9

agreement and sentenced Defendant to 151 months imprisonment on both counts combined. Had the career offender enhancement not been applied, the guideline imprisonment range would have been 121 to 151 months. Defendant appealed.

## II.

Defendant's sole argument on appeal is that, in light of Carachuri-Rosendo, the district court wrongfully relied upon our past precedent in Hill to label him a career offender under U.S.S.G. § 4B1.1(a). Absent *en banc* consideration, we generally "cannot overturn the decision of another panel of this court." United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000). This rule does not apply, however, when the Supreme Court issues an intervening decision that is "contrary" to or "invalidates our previous analysis." Id.; United States v. Shipp, 589 F.3d 1084, 1090 n.3 (10th Cir. 2009) (citation omitted). Thus, we must now determine whether Carachuri-Rosendo contradicts or invalidates Hill's prescribed method for determining the maximum punishment length for a past state crime. This issue is entirely legal in nature, and we review legal issues in this context de novo. United States v. Patterson, 561 F.3d 1170, 1172 (10th Cir. 2009). In the end, we hold that Carachuri-Rosendo does indeed invalidate Hill's analysis.

We acknowledge up front that Carachuri-Rosendo is not directly on point with Hill or with our Defendant. After all, Carachuri-Rosendo involved immigration law, a different line of Supreme Court precedent, see, e.g., Lopez, 549 U.S. 47, and whether a past crime was an *aggravated* felony, among various other distinguishable

aspects.[2] The question, however, is not whether an intervening Supreme Court case is on all fours with our precedent, but rather whether the subsequent Supreme Court decision *contradicts* or *invalidates* our prior analysis. Here, Carachuri-Rosendo plainly invalidates Hill, primarily because of the Supreme Court's clarification of the holding of its own precedent—Rodriquez. As detailed above, the Supreme Court rejected the argument that Rodriquez's recidivism holding supported the Government's "hypothetical to a hypothetical" approach. Carachuri-Rosendo, 560 U.S. at 577 n.12. In doing so, the Supreme Court expounded upon Rodriquez in a manner entirely contradictory to our interpretation of that case in Hill.

In Hill, we relied on Rodriquez to overturn our own prior precedent. Rodriquez, we wrote, stood for the proposition that "the calculation of the 'maximum term of imprisonment . . . prescribed by law' included the term imposed by applicable recidivist statutes." Hill, 539 F.3d at 1218 (quoting Rodriquez, 553 U.S. at 393). Moreover, we held, Rodriquez "explicitly rejected the proposition that mandatory guidelines systems that cap sentences [like Kansas's system] can decrease the maximum term of imprisonment." Id. (quoting Rodriquez, 553 U.S. at 390) (internal quotation marks omitted). The Supreme Court in Carachuri-Rosendo, however, wrote that under Rodriquez a recidivist finding could *only* set the maximum

---

[2]    To give another example, as mentioned above the Supreme Court emphasized that the scales were tilted against the Government from the beginning because "the English language tells us that most aggravated felonies are punishable by sentences far longer than 10 days . . . ." Carachuri-Rosendo, 560 U.S. at 575.

11

term of imprisonment "when the finding is a part of the record of conviction." Carachuri-Rosendo, 560 U.S. at 577 n.12 (emphasis added). Riffing on the facts of Rodriquez, the Court stated: "[W]hen the recidivist finding giving rise to a [prior] 10-year sentence is not apparent from the sentence itself, or appears neither as part of the 'judgment of conviction' nor the 'formal charging document,' the Government will not have established that the defendant had a prior conviction for which the maximum term of imprisonment was 10 years or more . . . ." Id. (internal citation omitted). In short, in Hill we interpreted Rodriquez to mean the most severe recidivist increase possible *always* applies when calculating a maximum sentence, whereas the Supreme Court has now interpreted Rodriquez to mean a recidivist increase can *only* apply *to the extent that a particular defendant was found to be a recidivist*. This makes all the difference in the world to our Defendant, who was saddled by the district court with the guideline range merited by the worst recidivist imaginable even though his own recidivism did not allow for imprisonment of more than one year. Under Rodriquez via Hill Defendant is a career offender; under Rodriquez via Carachuri-Rosendo, he is not.

Based on Carachuri-Rosendo, our interpretation of Rodriquez in Hill was incorrect. This incorrect interpretation was pivotal to our holding in Hill that, in determining whether a prior Kansas crime was punishable by more than a year in prison, we must "focus on the maximum statutory penalty for the offense, *not* the

12

individual defendant." Hill, 539 F.3d at 1221 (emphasis added).[3]  Thus, we must reverse the district court here and hold that Carachuri-Rosendo contradicts and invalidates Hill.  Under Kansas law, Defendant could not have been sentenced to more than seven months in jail for his eluding conviction.  That conviction, therefore, did not qualify as an "offense punishable by . . . imprisonment for a term exceeding one year."  U.S.S.G. § 4B1.2 cmt. app. n.1.  As such, Defendant should not have been labeled a career offender under the Guidelines because he only had one "prior felony conviction[] of either a crime of violence or a controlled substance offense," whereas two such convictions are required.  Id. § 4B1.1(a).  To summarize, Hill no longer controls, and we revert back to our prior precedent on this point.[4]

---

[3]  At oral argument the Government asserted that, while Hill was "informed" by Rodriquez, our misreading of Rodriquez did not actually "dictate" Hill's conclusion.  We disagree.  Our language in Hill makes clear that had it not been for Rodriquez, we would not have overruled Plakio.  See, e.g., Hill, 539 F.3d at 1218–20 ("Under the doctrine of *stare decisis*, the structure of § 922(g)(1), alone, would not have been sufficient to overrule our precedent. . . . Intervening Supreme Court precedent [*i.e.* Rodriquez], however, overrules our prior approach.").

[4]  Our decisions in United States v. Coleman, 656 F.3d 1089 (10th Cir. 2011), and United States v. Romero-Leon, 488 F. App'x 302 (10th Cir. 2012), do not contradict this holding.  First and foremost, the Government does not rely on these cases. Second, while in Coleman and Romero-Leon we did, post-Carachuri-Rosendo, rely on Hill and its interpretation of Rodriquez, we never mentioned Carachuri-Rosendo in either case.  "[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel."  Streu v. Dormire, 557 F.3d 960, 964 (8th Cir. 2009); cf. United States v. West, 646 F.3d 745, 748 (10th Cir. 2011) ("Mr. West did not raise his challenge to the restitution award in his initial . . . appeal, and, therefore, we are not bound by the law of the case with respect to this issue.").  Third, not only was Romero-Leon unpublished, but it also is arguably distinguishable since the defendant there had
(continued...)

## III.

The case law surrounding this issue strongly supports our holding. Most importantly (as noted above) two circuits have already analyzed Carachuri-Rosendo's effect in this regard, and both have agreed with our conclusion. Moreover, they have done so at the prompting of the Supreme Court.

The initial case comes from the Eighth Circuit and bears a striking resemblance to our situation. In Haltiwanger, the district court found a defendant's prior drug tax stamp conviction under 21 U.S.C. 841(b)(1) was a felony even though—under Kansas law, again—he could only have received seven months in jail. See United States v. Haltiwanger, No. CR07–4037, 2009 WL 454978, at *5 (N.D. Iowa Feb. 23, 2009) (unpublished). The Eighth Circuit, prior to Carachuri-Rosendo, agreed. See United States v. Haltiwanger, 356 F. App'x 918 (8th Cir. 2009) (per curiam) (unpublished). The Supreme Court, however, granted certiorari and remanded the case, without opinion, "for further consideration in light of Carachuri-Rosendo." Haltiwanger v. United States, 131 S. Ct. 81 (2010). On remand, "[u]pon careful review of Carachuri-Rosendo, including the Court's clarification and reiteration of its holding in Rodriquez," the Eighth Circuit reversed course: "[W]here a maximum term of imprisonment of more than one year is directly tied to

---

[4](...continued)
aggravating circumstances that would have allowed for a sentence of ten years or more on his past state convictions. Romero-Leon, 488 F. App'x at 305.

14

recidivism, <u>Carachuri-Rosendo</u> and <u>Rodriquez</u> require that an actual recidivist finding—rather than the mere possibility of a recidivist finding—must be part of a particular defendant's record of conviction for the conviction to qualify as a felony." <u>Haltiwanger</u>, 637 F.3d at 883–84. Because Haltiwanger's record of conviction did not include recidivism sufficient to expose him to more than one year in prison, "the hypothetical possibility that some recidivist defendants could have faced a sentence of more than one year is not enough to qualify Haltiwanger's conviction as a felony under 21 U.S.C. § 841(b)(1)." <u>Id.</u> at 884. Judge Beam dissented, writing only: "I believe that our judgment in this case is not affected by <u>Carachuri-Rosendo</u>." <u>Id.</u>

Several months after the Eighth Circuit's about-face in <u>Haltiwanger</u>, an *en banc* Fourth Circuit panel confronted the same issue. There, the district court had originally classified a defendant's prior North Carolina drug conviction as a felony under 21 U.S.C. § 841(b)(1) even though he could have received at most eight months community service. <u>Simmons</u>, 649 F.3d at 239–41.[5] On appeal, prior to <u>Carachuri-Rosendo</u>, the Fourth Circuit affirmed. <u>See</u> <u>United States v. Simmons</u>, 340 F. App'x 141 (4th Cir. 2009) (unpublished). Like <u>Haltiwanger</u>, the Supreme Court granted certiorari and remanded the case, without opinion, "for further consideration in light of <u>Carachuri-Rosendo</u>." <u>Simmons v. United States</u>, 130 S. Ct. 3455 (2010).

---

[5] Like Kansas, the North Carolina "sentencing structure ties a particular defendant's criminal history to the maximum term of imprisonment." <u>Simmons</u>, 649 F.3d at 244 (quoting <u>Haltiwanger</u>, 637 F.3d at 884).

On remand, the same panel concluded Carachuri-Rosendo did not implicate its prior analysis. See United States v. Simmons, 635 F.3d 140 (4th Cir. 2011). After *en banc* rehearing, however, the Fourth Circuit also reversed course. According to an eight-judge majority, the Fourth Circuit precedent holding similarly to Hill—United States v. Harp, 406 F.3d 242 (4th Cir. 2005)—was no longer good law under Carachuri-Rosendo. See Simmons, 649 F.3d at 239–50. Explicitly tracking Haltiwanger, the Fourth Circuit held that "'where a maximum term of imprisonment . . . is directly tied to recidivism,' the 'actual recidivist finding . . . must be part of a particular defendant's record of conviction for the conviction to qualify as a felony.'" Id. at 244 (quoting Haltiwanger, 637 F.3d at 884). Five dissenters found the Simmons majority's holding to be "contrary to the plain language of the relevant statutes," which differed "in critical respects" from the immigration statutes at issue in Carachuri. Id. at 250, 253. More specifically, this dissent argued the phrase "offense punishable by more than one year imprisonment" clearly calls for an offense-specific analysis rather than a defendant-specific analysis. Id. at 258. "As such," the dissent concluded, "we [should] follow the mandate of Congress to look to the maximum authorized punishment for *any* defendant convicted of the offense." Id. (emphasis added).

Although we are not unsympathetic to the dissent's appeal to plain language, we are not analyzing this case in a vacuum. Rather, Supreme Court precedent binds us. And we simply cannot ignore Carachuri-Rosendo's unambiguous clarification

16

of <u>Rodriquez</u> that directly contradicts our view of <u>Rodriquez</u> in <u>Hill</u>.[6] We also cannot ignore the Supreme Court's subsequent remands to the Fourth and Eighth Circuits with instruction to analyze markedly similar issues "in light of <u>Carachuri-Rosendo</u>." Certainly, such remands are not "final determination[s] on the merits" by the Supreme Court. <u>Tyler v. Cain</u>, 533 U.S. 656, 666 n.6 (2001). They do, however, indicate the Supreme Court believes there is a "reasonable probability" these circuits "would reject a legal premise on which [they] relied . . . ." <u>Id.</u>

Finally, our present holding also comports with the Sixth Circuit's decision in <u>United States v. Pruitt</u>, 545 F.3d 416 (6th Cir. 2008). While <u>Pruitt</u> pre-dates <u>Carachuri-Rosendo</u>, both the Fourth and Eighth Circuits noted that <u>Carachuri-Rosendo</u> "essentially ratified the Sixth Circuit's understanding of <u>Rodriguez</u>." <u>Haltiwanger</u>, 637 F.3d at 884; <u>see</u> <u>Simmons</u>, 649 F.3d at 244 ("[T]he Sixth Circuit's analysis [in <u>Pruitt</u>] now seems clearly correct given the Supreme Court's subsequent ruling in <u>Carachuri</u>."). The Sixth Circuit in <u>Pruitt</u> held, in regard to whether prior North Carolina convictions made a defendant a career offender under U.S.S.G.

---

[6] Furthermore, we agree with much of what the Fourth Circuit majority wrote in <u>Simmons</u>. For instance, the majority notes that under the dissent's approach, virtually all North Carolina offenses—from the most minor misdemeanor to the most major felony—would be considered felonies for federal purposes. <u>Simmons</u>, 649 F.3d at 249–50. This, the majority opined, "makes a mockery of North Carolina's carefully crafted sentencing scheme." <u>Id.</u> at 249. The same applies here. Taking the hypothetical worst offender into account, every Kansas crime—severity level I to severity level X—would be considered punishable by more than one year in prison for federal law purposes. <u>See</u> Appendix.

17

§ 4B1.1(a), that in light of Rodriquez courts must "consider the defendant's particular prior record level—and not merely the worst [possible] prior record level—in determining whether a conviction was for an offense 'punishable' by a term exceeding one year." Pruitt, 545 F.3d at 424. Thus, in essence, *three* circuits have agreed with our Defendant, whereas none have agreed with the Government.[7]

## IV.

In conclusion, Hill—which looked to the hypothetical worst possible offender to determine whether a state offense was punishable by more than a year in prison—cannot stand in light of Carachuri-Rosendo. We now hold, in line with our pre-Hill precedent, that in determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received controls, rather than the amount of time the worst imaginable recidivist could have received. As such, Defendant's prior Kansas conviction for eluding police is not a felony for purposes of U.S.S.G. § 4B1.1(a).

---

[7] Supplemental authority filed by Defendant calls into question whether the Government even agrees with its *own* position on this case. In a Fed. R. App. P. 28(j) letter filed prior to oral argument, Defendant asserted that the United States Solicitor General agreed before the Supreme Court, in two recent cases from the Sixth Circuit, that remand was appropriate on this issue because the defendants had been subjected to erroneous sentences. The Government did not respond to the 28(j) letter prior to oral argument. At oral argument, the Government did not disagree with Defendant's assertion. Rather, the Government stated it was not prepared at that time to distinguish the Solicitor General's actions. We have received no follow-up containing any such distinction. Thus, the Government has seemingly taken contradictory positions on this issue in different federal courts.

The district court's imposition of a career offender enhancement was therefore in error and is REVERSED.  This case is REMANDED for resentencing.

# APPENDIX
## SENTENCING RANGE – NONDRUG OFFENSES

| Category → Severity Level ↓ | A 3 + Person Felonies | B 2 Person Felonies | C 1 Person & 1 Nonperson Felonies | D 1 Person Felony | E 3 + Nonperson Felonies | F 2 Nonperson Felonies | G 1 Nonperson Felony | H 2 + Misdemeanor | I 1 Misdemeanor No Record |
|---|---|---|---|---|---|---|---|---|---|
| I | 653 / 620 / 592 | 618 / 586 / 554 | 285 / 272 / 258 | 267 / 253 / 240 | 246 / 234 / 221 | 226 / 214 / 203 | 203 / 195 / 184 | 186 / 176 / 166 | 165 / 155 / 147 |
| II | 493 / 467 / 442 | 460 / 438 / 416 | 216 / 205 / 194 | 200 / 190 / 181 | 184 / 174 / 165 | 168 / 160 / 152 | 154 / 146 / 138 | 138 / 131 / 123 | 123 / 117 / 109 |
| III | 247 / 233 / 221 | 228 / 216 / 206 | 107 / 102 / 96 | 100 / 94 / 89 | 92 / 88 / 82 | 83 / 79 / 74 | 77 / 72 / 68 | 71 / 66 / 61 | 61 / 59 / 55 |
| IV | 172 / 162 / 154 | 162 / 154 / 144 | 75 / 71 / 68 | 69 / 66 / 62 | 64 / 60 / 57 | 59 / 56 / 52 | 52 / 50 / 47 | 48 / 45 / 42 | 43 / 41 / 38 |
| V | 136 / 130 / 122 | 128 / 120 / 114 | 60 / 57 / 53 | 55 / 52 / 50 | 51 / 49 / 46 | 47 / 44 / 41 | 43 / 41 / 38 | 38 / 36 / 34 | 34 / 32 / 31 |
| VI | 46 / 43 / 40 | 41 / 39 / 37 | 38 / 36 / 34 | 36 / 34 / 32 | 32 / 30 / 28 | 29 / 27 / 25 | 26 / 24 / 22 | 21 / 20 / 19 | 19 / 18 / 17 |
| VII | 34 / 32 / 30 | 31 / 29 / 27 | 29 / 27 / 25 | 26 / 24 / 22 | 23 / 21 / 19 | 19 / 18 / 17 | 17 / 16 / 15 | 14 / 13 / 12 | 13 / 12 / 11 |
| VIII | 23 / 21 / 19 | 20 / 19 / 18 | 19 / 18 / 17 | 17 / 16 / 15 | 15 / 14 / 13 | 13 / 12 / 11 | 11 / 10 / 9 | 11 / 10 / 9 | 9 / 8 / 7 |
| IX | 17 / 16 / 15 | 15 / 14 / 13 | 13 / 12 / 11 | 13 / 12 / 11 | 11 / 10 / 9 | 10 / 9 / 8 | 9 / 8 / 7 | 8 / 7 / 6 | 7 / 6 / 5 |
| X | 13 / 12 / 11 | 12 / 11 / 10 | 11 / 10 / 9 | 10 / 9 / 8 | 9 / 8 / 7 | 8 / 7 / 6 | 7 / 6 / 5 | 7 / 6 / 5 | 7 / 6 / 5 |

**Probation Terms are:**

36 months recommended for felonies classified in Severity Levels 1-5

24 months recommended for felonies classified in Severity Levels 6-7

18 months (up to) for felonies classified in Severity Level 8

12 months (up to) for felonies classified in Severity Levels 9-10

**Postrelease Supervision Terms are:**

36 months for felonies classified in Severity Levels 1-4

24 months for felonies classified in Severity Levels 5-6

12 months for felonies classified in Severity Levels 7-10

**Postrelease for felonies committed before 4/20/95 are:**

24 months for felonies classified in Severity Levels 1-6

12 months for felonies classified in Severity Level 7-10



**LEGEND**

Presumptive Probation

Border Box

Presumptive Imprisonment