**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

REYNALDO ROMERO-LEÓN,

Defendant - Appellant.

No. 14-2054

(D.C. No. 1:09-CR-00902-WJ-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

Reynaldo Romero-León appeals to us for a shorter sentence, arguing that the district court's reliance on the Armed Career Criminal Act (ACCA) has subsequently been invalidated by *United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014). For the following reasons, we reverse and remand for resentencing.

**I.**

Eighteen U.S.C. § 922(g) makes it unlawful for felons and illegal aliens to possess firearms. *See id.* § 922(g)(1) & (5). Pursuant to the ACCA, a person who violates § 922(g) and has three prior "serious drug offense" convictions faces a

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

mandatory minimum of 15 years in prison. *See* 18 U.S.C. § 924(e). The ACCA defines "serious drug offense" as an offense "for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii).

In 1999, in the New Mexico state court system, Romero-León pled guilty to three drug crimes. Although the underlying criminal activities took place at different times, they were resolved in a single plea agreement. Romero-León received a nine-year sentence for each offense; the sentences, however, were apparently deferred in favor of probation. Several years later, in 2002, Romero-León was convicted of another state drug offense in New Mexico. It is undisputed that this offense was punishable by a sentence greater than ten years.

In 2010, Romero-León pled guilty in the federal District of New Mexico to two crimes under § 922(g): (1) being a felon in possession of a firearm; and (2) being an illegal alien in possession of a firearm. At sentencing, the Government asked the district court to apply the ACCA. Romero-León undeniably had one prior "serious drug offense" (the 2002 crime), and the Government asserted at least two of Romero-León's 1999 convictions qualified because they were punishable by ten years' imprisonment or more. After wrestling with the issue, the court eventually agreed. In doing so, the court relied on *United States v. Hill*, 539 F.3d 1213 (10th Cir. 2008). There, we held that in determining whether a crime qualified as a "crime punishable by imprisonment for a term exceeding one year" under § 922(g)(1), the statutory maximum penalty controlled rather than the individual defendant's unique

2

circumstances. *Hill*, 539 F.3d at 1221. Thereafter, in May 2011, the court sentenced Romero-León to 210 months in prison. In July 2012, citing *Hill*, we affirmed. *See United States v. Romero-Leon*, 488 F. App'x 302, 304–05 (10th Cir. 2012) (unpublished) ("Here, while all of Mr. Romero–Leon's consolidated [1999] offenses carried a sentence of nine years, at the time of his convictions each could have been enhanced under New Mexico law by three years for aggravating circumstances.").

In June 2013, Romero-León moved to "vacate, set aside or correct" his sentence under 28 U.S.C. § 2255, contending (among other things) that the ACCA was inapplicable to his case. A magistrate judge opined that this argument was barred because the issue had been addressed on direct appeal. Romero-León did not object to the magistrate's conclusion, and the district court concurred. The court did, however, decide to grant the motion in part and re-sentence Romero-León because his two § 922(g) convictions were multiplicitous. On April 2, 2014, the court re-sentenced Romero-León to 195 months in prison—again applying the ACCA.

On April 8, 2014, Romero-León filed a *pro se* notice of appeal "Concerning The Sentence I Received on The date of April 2 and 2014." On April 14, Romero-León sent another *pro se* letter to the Tenth Circuit stating he was "appealing the 195 month sentence I received on April 2nd, 2014." On April 30, he sent a letter written entirely in Spanish; in it, he again protested the April 2 sentence and requested new counsel be appointed because his current counsel was ineffective. Eventually, Romero-León's counsel appeared and submitted a docketing statement indicating

3

Romero-León was appealing the sentence he received on April 2. As a result of all this, we calendared the appeal as a direct appeal from Romero-León's new sentence.

Then, on June 2, 2014, we issued *Brooks*, 751 F.3d 1204. Based on the United States Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), *Brooks* overruled *Hill* and emphasized that "in determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received controls, rather than the amount of time the worst imaginable recidivist could have received." *Brooks*, 751 F.3d at 1213. In a footnote, we explained why *Romero-Leon* did not control:

> First and foremost, the Government does not rely on [this] case[]. Second, while in . . . *Romero-Leon* we did, post-*Carachuri-Rosendo*, rely on *Hill* . . . we never mentioned *Carachuri-Rosendo* . . . . '[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel.' Third, not only was *Romero-Leon* unpublished, but it also is arguably distinguishable since the defendant there had aggravating circumstances that would have allowed for a sentence of ten years or more on his past state convictions.

*Id.* at 1211 n.4 (internal citations omitted).

Romero-León's counsel subsequently moved to withdraw, citing irreconcilable differences. We granted this motion. On September 15, 2014, Romero-León's newly appointed counsel submitted his opening brief on appeal, contending that *Brooks* did not allow Romero-León to be sentenced under the ACCA. Significantly, however, this brief indicated Romero-León was attacking his original May 2011 sentence under § 2255, rather than his April 2014 sentence on direct appeal. In response, the

4

Government filed a motion asserting that Romero-León must obtain a certificate of appealability (COA) if he was going to pursue a § 2255 appeal.

On November 20, 2014, we directed the clerk to modify the docket to show this appeal as a § 2255 appeal rather than a direct criminal appeal. As a result, we noted, a COA was indeed necessary before any proceedings could continue. On January 27, 2015, we granted Romero-León a COA on this question: "Was the defendant wrongly sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), in light of [*Brooks* and *Carachuri-Rosendo*]." The parties subsequently completed their briefing and participated in oral argument.

## II.

Before we can discuss the merits, we must return to the troubling question of whether this is a direct or a § 2255 appeal. Romero-León is protesting the application of the ACCA to his sentence—that much is clear. As it stands, though, he is contesting his *original* May 2011 sentence via § 2255. But Romero-León's original sentence has been vacated (and Romero-León has been re-sentenced). So, how can we "vacate, set aside or correct" a sentence that no longer exists? It would appear that Romero-León may be barking up the wrong tree. *See United States v. Moore*, 83 F.3d 1231, 1235 (10th Cir. 1996) ("After vacation of the sentence pursuant to 28 U.S.C. § 2255, however . . . the original sentence . . . is eviscerated."); *cf. Johnson v. Ponton*, 780 F.3d 219, 223 (4th Cir. 2015) ("[W]e conclude that Johnson's petition is justiciable *because he is currently serving the*

5

*sentence he challenges*." (emphasis added)).  At minimum, Romero-León has failed to explain how resentencing did not moot his § 2255 appeal.

Thankfully, we need not decide this issue.  That is because we feel comfortable here (re-)construing this appeal as a direct appeal from Romero-León's most recent sentencing.  As detailed above, Romero-León originally filed, *pro se*, a direct appeal of his April 2, 2014 sentence, and we originally calendered it as such. It was only later—after Romero-León was appointed a new counsel—that his approach changed.  Assuming, without deciding, that this new approach was incorrect, we see no need to penalize Romero-León with dismissal when, appearing *pro se*, he got it right in the first place, and when the sole legal issue in question remains the same.  Thus, we proceed on the assumption that this is a direct appeal from the April 2 proceeding, in which the ACCA was again applied to enhance Romero-León's sentence.  Accordingly, we direct the clerk to modify the docket to show this appeal as a direct criminal appeal rather than a § 2255 appeal.[1]

## III.

In *Brooks*, we held "that in determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received controls."  *Brooks*, 751 F.3d at 1213.

---

[1]  This obviates any need to discuss whether Romero-León can re-litigate through § 2255 a claim decided against him on direct appeal, or whether Romero-León waived his ACCA argument by failing to object to the magistrate's recommendation in his § 2255 proceeding.

6

Romero-León contends the maximum amount of prison time he could have received for his three 1999 drug offenses was nine years, meaning they did not qualify as "serious drug offense[s]" under the ACCA. In response, the Government asserts that, in 1999, New Mexico law gave the state trial court authority to sentence Romero-León to 12 years for at least two of the three offenses. Thus, this appeal requires us to determine what exact punishment Romero-León was facing under New Mexico law in 1999. This, obviously, is a legal determination we approach *de novo*. *See United States v. Johnson*, 630 F.3d 970, 975 (10th Cir. 2010).

Two New Mexico statutes (circa 1999) are relevant here. The first, N.M.S.A. § 31-18-15, stated (at the time): "If a person is convicted of a noncapital felony, the basic sentence of imprisonment is . . . for a second degree felony, *nine years imprisonment . . . unless* the court alters the sentence pursuant to the provisions of Section 31-18-15.1 . . . ." N.M.S.A. § 31-18-15 (emphasis added) (effective until July 2007). And, until it was later held unconstitutional, § 31-18-15.1 provided that:

> A. The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31-18-15 . . . upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case. . . .
>
> C. The amount of the alteration of the basic sentence for noncapital felonies shall be determined by the judge. However, in no case shall the alteration exceed one-third of the basic sentence . . . .

7

N.M.S.A. § 31-18-15.1 (invalidated by *State v. Frawley*, 172 P.3d 144 (N.M. 2007)).

*A. Arguments*

The Government argues these two statutes, read together, created permissible sentencing *ranges*, with the specific sentence listed in § 31-18-15 (here, 9 years) serving as the midpoint of a given range (here, 6–12 years). *See State v. Wilson*, 24 P.3d 351, 356 (N.M. Ct. App. 2001) ("Sections 31–18–15 and 31–18–15.1 must be read together to create permissible ranges of sentences, with the basic sentences prescribed by Section 31–18–15 being the midpoints of these ranges."). The Government asserts trial courts had broad discretion to sentence within these ranges so long as they found aggravating or mitigating circumstances. Indeed, the Government contends, a New Mexico trial court wasn't even required to provide advance notice of an aggravated sentence when the circumstance leading to the higher sentence "was itself an element of the underlying offense or a fact used to establish such an element." *Caristo v. Sullivan*, 818 P.2d 401, 409–10 (N.M. 1991).

The Government claims all of this distinguishes the Kansas sentencing scheme in *Brooks*, where trial courts did not have discretion to impose a sentence beyond the prescribed range unless a jury found aggravating factors and the state provided advance notice of its intent to seek such a sentence. The Government asserts this also distinguishes *Carachuri-Rosendo*, where the decision not to charge the defendant as a recidivist had been in the hands of the state prosecutor—not the court—and the prosecutor had declined to make such a charge.

8

Thus, factually, the Government contends that in 1999 Romero-León was faced with the *actual*—not hypothetical—possibility of a 12-year sentence, even though the prosecution never sought an aggravated sentence and the court only sentenced him to nine years. How so? According to the Government, several aggravating factors existed that the court could have used, *sua sponte*. First, the court could have found Romero-León's committing three similar drug offenses in a short period of time to be an aggravating factor. *See State v. Segotta*, 672 P.2d 1129, 1132 (N.M. 1983) (listing "pattern of conduct indicating . . . serious threat to society" as a potential aggravating factor). Second, the court could have found Romero-León's committing a third offense while under indictment for two others to be an aggravating factor. Finally, for further support, the Government points out the original indictment charged Romero-León with a crime carrying a "[b]asic sentence of 9 years but not less than 6 years nor more than 12 years imprisonment," and that his plea agreement informed him that "[a]ny basic sentence for a felony may be altered up to one third for aggravating . . . circumstances." Aple's Br. at 17.[2]

Romero-León objects to this line of reasoning under both state and federal law. Under state law, Romero-León cites *Frawley* as definitive proof that the Government has greatly exaggerated the "broad" role of a judge in New Mexico's sentencing

---

[2] Both the Government and Romero-León have moved to supplement the record on appeal with various documents, including Romero-León's original 1999 indictments. We grant these motions, and we have considered the documents.

scheme. Here is what the New Mexico Supreme Court said in *Frawley*:

> [N]otwithstanding the broad statutory language [in § 31-18-15.1] implying that a judge in New Mexico may alter a sentence upward in any case, *the actual fact is that a judge's discretion to do so is quite limited. Long ago,* we construed Section 31-18-15.1 to mean that the State must actually seek "enhancement" of a basic sentence on grounds of aggravating circumstances by *filing a pleading* so that the defendant may have "notice of the specific aggravating factors on which the state intends to rely." *Caristo v. Sullivan*, 112 N.M. 623, 631 (1991) (emphasis added). In other words, *in actual day-to-day operation of our sentencing laws, it is the State's discretion, rather than the judge's, that must be exercised before a sentence may be aggravated. . . .*

172 P.3d at 153 (emphases added and omitted). Per *Frawley*, Romero-León argues he did not face 12 years because the prosecution never sought an enhancement.

Under federal law, Romero-León contends the Government's view is "incompatible with the central teaching of *Carachuri-Rosendo*," Aplt's Reply Br. at 4, which was that federal judges are not permitted to apply enhancements that state officials declined to pursue. *See Carachuri-Rosendo*, 560 U.S. at 579–80 ("Were we to permit a federal immigration judge to apply his own recidivist enhancement after the fact . . . we would denigrate the independent judgment of state prosecutors to execute the laws of those sovereigns."); *id.* at 582 ("The prosecutor in Carachuri-Rosendo's [Texas] case declined to charge him as a recidivist. He has, therefore, not been convicted of a felony punishable under the Controlled Substances Act."). In short, Romero-León argues the Government's alleged aggravating factors are sheer conjecture, since there is no evidence anyone ever considered them in the state proceeding. *See id.* at 580 ("[T]he 'hypothetical approach' employed by the

10

Court of Appeals introduces a level of conjecture at the outset of this inquiry that has no basis in [precedent]. . . . [I]t focuses on facts . . . that could have but did not serve as the basis for the state conviction and punishment."). Finally, Romero-León contends the indictment language cited by the Government is meaningless boilerplate, and his plea agreement was conflicted, as it also contained language stating the "maximum penalties" for his charges were nine years and "[if] the court accepts this agreement, the defendant may be ordered to serve a period of incarceration of *up to* nine (9) years." (emphasis added). Aplt's Br. at 31.

*B. Analysis*

Romero-León gets the better of the dispute here. Simply put, *Frawley* devastates the Government's state-law argument. There, the New Mexico Supreme Court wrote, in plain terms, that "in actual day-to-day operation of our sentencing laws, it is the *State's* discretion, rather than the judge's, that must be exercised before a sentence may be aggravated." *Frawley*, 172 P.3d at 153 (emphasis in original). Furthermore, *Frawley* expressly states that this is *not* a new innovation; rather, this system has been in place since "[l]ong ago." *Id.* And a subsequent citation indicates "[l]ong ago" is referring at least as far back as 1991—eight years before Romero-León was sentenced. *See Caristo*, 818 P.2d 401.

To be sure, *Frawley* held that § 31-18-15.1 was unconstitutional, and that this decision on constitutionality could *not* be applied retroactively. *See Frawley*, 172 P.3d at 157–58. This conclusion, however, did not in any way nullify *Frawley*'s

11

description of how New Mexico's sentencing procedure was supposed to have actually functioned for the several previous decades. Moreover, it is difficult to see how *Frawley*'s description of New Mexico's sentencing procedure could be construed as dicta given that it was placed smack in the middle of, and was intertwined with, the New Mexico Supreme Court's pronouncement of its holding on the constitutionality of aggravated sentences. *See id.* at 153; *United States v. Neal*, 249 F.3d 1251, 1257 n.7 (10th Cir. 2001) (noting that we have defined dicta as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding" (citation omitted)).

To summarize, per the New Mexico Supreme Court, New Mexico judges in 1999 were *not* imbued with unfettered discretion to enhance a defendant's basic sentence, regardless of what the New Mexico Court of Appeals may have (wrongly) indicated at the time. *See Whitney v. Bd. of Educ. of Grand Cnty.*, 292 F.3d 1280, 1287 (10th Cir. 2002) ("In interpreting state law, we are bound by the holdings of the state's highest court . . . ."). Instead, the prosecution was apparently required to file a pleading giving Romero-León notice of potential aggravating factors. *See Frawley*, 172 P.3d at 153. That did not happen here, thus we cannot say Romero-León faced more than a nine-year sentence in 1999. So, under *Brooks*, Romero-León's 1999 drug crimes should not have triggered enhancement under the ACCA.[3]

---

[3] Though issued after Romero-León's sentencing, *Brooks* nevertheless
(continued...)

12

Our footnote in *Brooks* discussing Romero-León's case does not dictate anything to the contrary. To reiterate, in *Brooks* we wrote:

> Our decision[] in . . . *Romero-Leon* . . . do[es] not contradict this holding. First and foremost, the Government does not rely on [this] case[]. Second, while in . . . *Romero-Leon* we did, post-*Carachuri-Rosendo*, rely on *Hill* . . . we never mentioned *Carachuri-Rosendo* . . . . '[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel.' Third, not only was *Romero-Leon* unpublished, but it also is arguably distinguishable since the defendant there had aggravating circumstances that would have allowed for a sentence of ten years or more on his past state convictions.

*Brooks*, 751 F.3d at 1211 n.4 (internal citations omitted). Given that the original *Romero-León* decision was unpublished, as we duly noted in *Brooks*, all of our additional *Brooks* comments distinguishing Romero-León's case are dicta and therefore non-binding. *See Tokoph v. United States*, 774 F.3d 1300, 1303 (10th Cir. 2014). Moreover, the only comment that could possibly be construed as favorable to the Government—the final one—was prefaced with the key word "arguably." That is to say, in *Brooks* we were already aware that arguments could be made on both sides of its potential applicability to Romero-León's case. Here, after being briefed in full, we have heard these arguments and resolved the debate.

Finally, we note that *Carachuri-Rosendo*, while not directly on point, also

---

[3](...continued)
controls here. *See United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005) ("Decisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant.").

supports Romero-León. As Romero-León has noted, in *Carachuri-Rosendo* the Supreme Court wrote that, "[w]ere we to permit a federal immigration judge to apply his own recidivist enhancement after the fact . . . we would denigrate the independent judgment of state prosecutors to execute the laws of those sovereigns." *Carachuri-Rosendo*, 560 U.S. at 579–80. A similar principle applies here. The State of New Mexico chose not to pursue aggravated enhancements for Romero-León's 1999 drug crimes. Indeed, there is no evidence that anyone in 1999—prosecutor or judge—even *considered* the two specific aggravating factors put forth by the Government here. For us to permit a federal district judge to, in essence, apply its own enhancement well after the fact "would denigrate the independent judgment" of New Mexico to execute its own laws. For Romero-León's 1999 convictions, New Mexico declined to seek an enhanced sentence. He has, therefore, not been convicted of enough "serious drug offense[s]" to render himself punishable under the ACCA. *Cf. United States v. Rodriquez*, 553 U.S. 377, 389 (2008) ("[I]n those cases in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a[n ACCA-]qualifying

14

offense."). As such, we REVERSE and REMAND for the district court to re-sentence Romero-León sans application of the ACCA.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge